**Virginia TODD, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary, Department of Health and Human Services, Defendant.**

**Civ. A. No. 83–0069–O(J).**

United States District Court, W.D. Kentucky, Owensboro Division.

March 8, 1984.

Edward Dove, Western Kentucky Legal Services, Madisonville, Ky., for plaintiff.

Ronald E. Meredith, U.S. Atty., W.D. Kentucky, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

The plaintiff, Virginia L. Todd, filed this action seeking review of the final decision of the Secretary of Health and Human Services (Secretary) terminating her supplemental security income benefits effective June 1982 after finding that her disability ceased in April 1982. (TR 65). 42 U.S.C. § 1383(c)(3). Todd's benefits were originally awarded by the Secretary after her application, filed February 6, 1976, was approved upon a finding of disability stemming from "severe depressive neurosis." (TR 87, 88–91).

This matter is before the court on cross motions for summary judgment. FED.R. CIV.P. 56(c). Jurisdiction is proper in this court pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

As an initial matter, Todd moves to correct the record to include the November 19, 1982 medical report of Todd's treating physician, Dr. C.A. Asher, M.D., which was considered by the Appeals Council on February 3, 1983. The Appeals Council denied Todd's request for review and this became the final decision of the Secretary. (TR 2). The Secretary, however, failed to include this report in the certified record originally filed with this court. On review, the record consists of all the evidence considered by the Secretary in arriving at her final decision. *Estep v. Richardson*, 465 F.2d 969, 970 (6th Cir.1972). Since the filing of Todd's motion, however, the Secretary has filed these documents as a supplemental record. (TR 312–315). Accordingly, the court considers Todd's motion to correct the record as moot.

The court has reviewed the voluminous 470 page administrative record. The facts are not disputed. Virginia Todd was born December 18, 1936, and was 46 years old when her Title XVI benefits were terminated in June 1982. (TR 25, 65, 88). She has only a seventh grade education. (TR 28, 97). Todd's occupational history indicates that she last worked briefly in 1979 as a nurse's aide. (TR 29, 177). She has also worked for short terms as a waitress. (TR 31–33, 177). Her daughter and son must now care for her, in part. (TR 50, 54). At five feet and one inch in height, Todd weighs 195 pounds. (TR 26).

The ALJ concluded, after hearing the testimony of Todd and her son, Junior Ray Crafton, and reviewing the medical evidence, that Todd suffers from "... hypertension, diabetes, and emotional problems ... [and] exogenous obesity." (TR 8). While the Secretary's original disability determination in 1976 indicated a significant psychological disorder, the ALJ came to the opposite conclusion after the termination hearing finding her condition now adequately controlled by medication. (TR 8). The ALJ found that Todd's condition was no longer "severe" and no longer significantly limits her ability to perform basic work activities. (TR 8). The ALJ concluded that, effective April 1982, Todd had regained the ability to perform her past work and was not entitled to further disability benefits. Her benefits ceased in June 1982. (TR 8).

The sole issue before the court is whether the final decision of the Secretary is supported by substantial evidence in the record. Substantial evidence is "... such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), citing, *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

■ The court recognizes that in a disability benefit proceeding it is within the province of the Secretary, not the court, to weigh all the evidence and resolve any conflicts in the record. *Wokojance v. Weinberger*, 513 F.2d 210, 212 (6th Cir.1975); *Ragan v. Finch*, 435 F.2d 239, 241 (6th Cir.1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971). In reviewing the findings of the Secretary, however, the court will view the record as a whole to determine whether or not the finding is supported by substantial evidence. *Kirk v. Secretary*, 667 F.2d 524, 536 (6th Cir.1981), citing, *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). The court must not abdicate its responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the findings of the Secretary.

■ Todd challenges the Secretary's determination that her impairments, or combination of impairments, is no longer disabling. Todd claims that, while her psychological condition has stabilized with the use of medication, it has stabilized at a disabling level. She claims that her physical impairments have deteriorated since her original award of benefits. For the reasons given below the court finds that

Todd's exceptions to the Secretary's final decision are well taken and the final decision of the Secretary finding that Todd is not subject to a disability is not supported by substantial evidence.

Title 42 of the United States Code, Section 423(d)(2) requires that an individual be found disabled ".. if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." To satisfy this requirement, the claimant must show that she suffers from a severe impairment and is unable to do the type of work in which she formerly engaged. 20 C.F.R. § 416.961. Once she has made such a showing, the burden shifts to the Secretary and the latter must demonstrate other types of work which the claimant is capable of doing. *Kirk v. Secretary*, 667 F.2d at 529, *citing, Allen v. Califano*, 613 F.2d at 145.

▮ Such a showing includes the requirement that there is substantial evidence that Todd's medical condition has improved or was not as serious as the Secretary first supposed when benefits were granted. *See e.g., Miranda v. H.E.W.*, 514 F.2d 996, 998 (1st Cir.1975). This reading is consistent with the prior rulings of the United States Court of Appeals for the Sixth Circuit, *see e.g., Hall v. Celebreeze*, 314 F.2d 686, 688 (6th Cir. 1963), notwithstanding the Secretary's reliance on the dicta in *Myers v. Richardson*, 471 F.2d 1265 (6th Cir.1972), which was not a benefits cessation proceeding and is therefore factually distinguishable. Likewise, the Secretary's reliance on *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir.1971), is also misplaced. In *Hall v. Celebreeze*, 314 F.2d at 688, the court recognized that "[o]nce a condition has been shown to exist, there is a presumption, in the absence of proof to the contrary, that it has continued."

The final decision of the Secretary in this case provides that Todd suffers from a non-severe combination of impairments. A non-severe impairment is an impairment which "... does not significantly limit ... physical or mental abilities to do basic work activities." 20 C.F.R. § 416.921(a). Basic work activities are the abilities and aptitudes necessary to do most jobs. The regulation provides a number of examples, including physical functions, mental capacity, and dealing with changes in the work place. 20 C.F.R. § 416.921(b). Todd claims that her impairments preclude her from not only performing these basic work activities but her prior work as well.

A review of treatment records from the Trover Clinic for the period 1970 through 1982 reveal a significant medical history of physical and psychological impairments. (TR 188–309). The history is fairly summarized by Todd's treating physician, Dr. C.A. Asher, M.D., who reported in August 1982 that Todd continues to suffer hypertension, diabetes mellitus, chronic low back pain, hypertriglyceridemia, obesity, schizoid personality and bilateral serous otitis. (TR 176). Dr. Asher concluded that "... it is my feeling that due to her numerous medical problems, she [Todd] would probably not be able to work at any job on a regular basis." (TR 176). The medical evidence regarding Todd's physical condition is uncontroverted that she continues to require frequent treatment and suffers from a combination of impairments that are disabling.

▮ Though not binding, 20 C.F.R. § 416.929, the opinion of the treating physician is entitled to great weight for it reflects an expert judgment based on continuing observation of the patient's condition over a prolonged period of time. *Allen v. Califano*, 613 F.2d at 145; *Branham v. Gardiner*, 383 F.2d 614 (6th Cir. 1967). In November 1982 Dr. Asher opined that Todd's condition has deteriorated to a disabling level. (TR 176, 312–313). Dr. Asher's opinion is consistent with the clinical findings of record. The Secretary's finding to the contrary is not supported by substantial evidence. The Secretary cannot ignore uncontradicted medical evidence that the claimant is disabled. *See e.g., Noe*

*v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975); *Sayers v. Gardner*, 380 F.2d 940, 952 (6th Cir.1967).

■ Augmenting her significant physical impairments, it is unanimous among the professionals who have evaluated Todd that she suffers from a continuing severe psychological impairment as measured by standardized clinical tests recognized by the Secretary as appropriate measures for mental disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A). Dr. A.G. Johnson, board-certified in psychiatry and neurology, has treated Todd for seven years at the Trover Clinic and reiterated his diagnosis in March 1982 that she continues to suffer chronic dysphoria and schizoid personality despite attempts to regulate her condition with medication. (Prolixin Decanoate injections 0.5 cc/2 wks and Artane 1 mg/day), (TR 152). In his report, Dr. Johnson further commented that "[h]er overall psychiatric condition is essentially the same as it was in July 1979. Her medical condition is essentially the same with the addition of diabetes mellitus to her diagnosis." (TR 152). Evaluations performed by C.F. Ruff, Ph.D. clinical psychologist, (TR 154–156) and Dr. T.S. Manlavi, M.D., (TR 157–159), on April 12, 1982 are largely consistent with Dr. Johnson's diagnosis. To summarize, the WAIS test revealed that Todd has a full range I.Q. of only 75 (TR 155); the Bender-Gestalt test results suggested the possibility of an organic impairment (TR 156); and the Rorschach test indicated below average intellectual functioning, paranoid tendencies, and a lacking in healthy personality assets (TR 156). The ALJ rejected these assessments and substituted his own medical assessment of Todd's mental disorder. (TR 4–9). While the ALJ may choose between contradictory medical opinions or reject a medical opinion that is contradicted by other evidence of record, he is not free to set his own expertise against that of a physician who has personally examined the claimant. *Ragan v. Finch*, 435 F.2d 239, 241 (6th Cir.1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971).

In this case, the ALJ took out of context the professionals' impressions of Todd's condition, thereby distorting their overall evaluation of her mental health to reach a conclusion that directly contradicts the experts' unfavorable diagnosis and prognosis. Yet, there is nothing in the record, other than the ALJ's individual assessment of Todd's symptoms, to support the conclusion that the psychologists' diagnosis of mental impairment did not comport with their observations. There is certainly no contradictory medical evidence to suggest either that they incorrectly evaluated Todd's mental state or that their methodology deviated from accepted medical practice. Moreover, the doctors are unanimous that Todd suffers a significant personality disorder impairing her ability to perform substantial gainful work.

■ The concern here is that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a physical impairment and consequently the diagnostic techniques employed in the field of psychiatry may be somewhat less precise than those in other fields of medicine. However, where, as here, there is no other reason to question the diagnostic technique, the relative imprecision of the psychiatric methodology and the absence of substantiating documentation is not a sufficient basis upon which to reject the opinions contained in these reports.

The medical evidence consistently shows recurrent and persistent periods of anxiety with tension, apprehension, and interference with Todd's ability to concentrate. 20 C.F.R. Part 404, Subpart P, Appendix I, § 12.04(A)(2). This is associated with some "... restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people." 209 C.F.R. Part 404, Subpart P, Appendix I, § 12.-04(B).

The conclusion of the Secretary that Todd is capable of basic work activity and returning to her prior relevant work as a nurse's aid is not supported by substantial evidence. To the contrary, Todd established that she continues to suffer from a combination of severe physical and mental

impairments, individually or in combination, that have lasted since the cessation of her benefits in June 1982. Todd testified that she is unable to work because of her physical and mental impairments and this is supported by the medical evidence. No examining doctor gave a contrary opinion.

Since Todd demonstrated that she cannot return to her prior work, Todd sustained her burden. The burden therefore shifted to the Secretary to show Todd's ability to participate in other work. *Kirk v. Secretary*, 667 F.2d at 529, *citing, Allen v. Califano*, 613 F.2d at 145.

■ Generally, where an individual's claimed disability consists *entirely* of limited functional capacity caused by a severe, medically determinable impairment, the Secretary may sustain her burden by taking administrative notice of the existence of jobs in relation to functional capacity, age, education, and prior work experience. Application of these factors through the medical-vocational guidelines (the "grid") at 20 C.F.R. § 404.1569 dictates a finding of disabled or not disabled. *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Kirk v. Secretary*, 667 F.2d at 530–531.

In this case, however, the Secretary cannot meet her burden by this means since Todd suffers from a nonexertional impairment rendering the grid inapplicable. *Kirk v. Secretary*, 667 F.2d at 529. The grid is not applicable for finding no disability where the claimant suffers a nonexertional impairment. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 200.00(e). It was therefore incumbent upon the Secretary to make a non-grid determination of whether Todd is disabled and the United States Court of Appeals for the Sixth Circuit suggests that such a determination is ordinarily to be based on vocational expert testimony. *Kirk v. Secretary*, 667 F.2d at 540. The Secretary failed to meet her burden of showing that Todd is capable of substantial gainful activity.

An appropriate order is entered today granting the motion of Todd for summary judgment and remanding this matter to the Secretary for an award of benefits from the date of the Secretary's termination of benefits June 1982.

DATED: March 8, 1984.