HARVEY H. MULLINS

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

*and*

ROBINSON-PHILLIPS COAL CO.

(No. 14629)

Decided March 25, 1980.

*Amos C. Wilson*, for appellant.

*H. L. Kirkpatrick, III*, for appellees.

NEELY CHIEF JUSTICE:

This case involves only one question: whether a 40% pneumoconiosis disability when combined with calcification of the lungs caused by an unknown source, entitles a claimant to a permanent total award where the claimant is 100% disabled from the combined effects. The Appeal Board was correct in finding that the claimant was fully compensated by his 40% permanent partial disability award.

Claimant, Harvey H. Mullins, initially filed an application for benefits in 1973; pursuant to his examination by the Occupational Pneumoconiosis Board he was granted a 40% award. In 1977, the claimant requested a reopening of his claim which was granted. Again the Occupational Pneumoconiosis Board found his disability to be 40%, but noted that the claimant had "marked pleural calcification and thickening of the pleural throughout the lower half of the left lung field and diaphragm...."

Upon protest, hearings were held and the Workmen's Compensation Appeal Board affirmed the Commissioner's determination that the claimant was entitled to only a 40% award, being the part of his total disability attributable to his employment. The Board reasoned that claimant has the burden of proving aggravation or progression of his injury when a case is reopened and the claimant failed to meet his burden.

The question we must decide is whether claimant is entitled to a permanent total disability award based upon the combined effects of a compensable injury and a disease. Our recent case of *Boggs v. State Workmen's Compensation Commissioner and Ranger Fuel Corp.*, 163 W.Va. 413, 256 S.E.2d 890 (1979) is dispositive. There we held that a claimant may not recover under either *W.Va. Code,* 23-4-9b [1971] or *W.Va. Code* 23-3-1 [1947] when the debilitating condition which is being added to a compensable injury is the result of a disease and not "a previous injury."

The case before us is similar to *Boggs* in that claimant has a "definitely ascertainable physical impairment" under *Code,* 23-4-9b [1971]. However, as stated in *Boggs, supra* at 892:

> [T]hat provision must be read *in pari materia* with the provision that the impairment be "caused by a previous injury" under *W.Va. Code,* 23-3-1 [1947]. This Court has consistently held that "such physical impairment must have been caused from an injury and not a disease unless such physical impairment was an occupational

disease proved to have been proximately caused by ... employment." *Bannister v. State Workmen's Compensation Commissioner*, 154 W.Va. 172, 176, 174 S.E.2d 605, 607-08 (1970). *See Huff v. State Workmen's Compensation Commissioner*, 157 W.Va. 530, 202 S.E.2d 383 (1974).

In the case before us there are no allegations that claimant's calcification of the lungs was anything other than a diseased condition and the testimony showed that the calcification was not the result of occupational pneumoconiosis. There was no evidence that the calcification was the result of an accident or was work related. Workmen's Compensation covers only occupational diseases; a disability resulting from the normal diseases of life was not intended to be compensated under our statute.

*Affirmed.*

McGRAW, JUSTICE, *dissenting:*

The foregoing opinion perpetuates a mistake in statutory interpretation by reading the language of W. Va. *Code* § 23-4-9b to require that the preexisting physical impairment be an "injury" for purposes of recovery under the second injury fund. The language in W. Va. *Code* § 23-4-9b requires only that a claimant have a "definitely ascertainable physical impairment". To reach the conclusion of the majority, the court relies on two dismal cases, *Boggs v. State Workmen's Compensation Commissioner*, 163 W.Va. 413, 202 S.E.2d 383 (1974) and *Bannister v. State Workmen's Compensation Commissioner*, 154 W.Va. 172, 174 S.E.2d 605 (1970) for the proposition that W.Va. *Code* § 23-4-9b must be read *in pari materia* with W.Va. *Code* § 23-3-1 in order to define the nature of preexisting disabilities cognizant under the second injury fund.

The fallacy of the majority opinion does not come from the proposition that the statutes should be read *in pari materia:* it comes from ignoring fundamental rules of law. The majorities view defeats the purpose of the second injury provisions. This is a case where two statutory

provisions conflict. One statute, W.Va. *Code* 23-4-9b, requires only that the claimant have a "physical impairment". The other statute, W. Va. *Code* § 23-3-1 requires that the physical impairment be "caused by a previous injury". Thus, one section does not require an injury and the other one does. It has long been the rule in this jurisdiction that "where there is a conflict between two parts of a single act, the one latest in position will be declared to be the law, as containing the latest expression of the legislative will." *Hudson v. State Compensation Commissioner*, 121 W.Va. 461, 5 S.E.2d 108, 111 (1939) *citing Board of Education v. County Court*, 77 W. Va. 523, 529, 87 S.E. 870, 872 (1916). W.Va. *Code* § 23-4-9b was last amended in 1971. W.Va. *Code* § 23-3-1 was last amended in 1947. We should give effect to the later expression of legislative intent. Even without this rule of statutory construction, our case law requires that the provisions of the act be liberally construed in order to effectuate the act's beneficent purposes. *Richardson v. State Workmen's Compensation Commissioner*, 153 W.Va. 454, 170 S.E.2d 221 (1969); *Hudson v. State Workmen's Compensation Commissioner*, 121 W.Va. 461, 5 S.E.2d 108 (1939).

These rules of construction aside, the majority should have examined the statutes in their simplest light. The phrase, "caused by a previous injury", when read in view of the purposes of the second injury fund, is employed here for semantical convenience not doctrinal development. Its use merely designates that the impairment must exist prior to the subsequent compensable disability. Any other reading leads to the absurd result reached in the instant case.

Second injury funds are designed to encourage employers to hire handicapped and disabled workers by removing from the employer the burden of directly paying for a disability for which he is not responsible. 2 Larson, *Workmen's Compensation Law*, § 59.31 (7th ed. 1978). If, indeed, this is the purpose of the fund, it is not served by an interpretation of the statute which restricts the payment of compensation based not upon the

fact of disability, but upon its cause. Today's decision will compensate a worker who has been partially disabled by a school days football injury while denying compensation to a worker who has had his health injured by a debilitating disease. Dean Larson noted the inconsistency of such an approach. "This result deprives a considerable class of handicapped workers of the benefits of the plan, although there is no reason in the history or policy of the legislation for discrimination between prior congenital and accidental injuries." 2 Larson, *supra* at § 59.32. The United States Supreme Court rejected a similar distinction based on whether the prior disability was compensable in *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U. S. 198, 69 S. Ct. 503, 93 L. Ed. 611 (1949).

Besides denying an important class of workers the benefits of the act, the majority draws artificial lines. There are many occasions when the distinction between an injury and a disease becomes so imperceptible that the only differences are specious at best. *See, e.g., Montgomery v. State Compensation Commissioner*, 116 W. Va. 44, 178 S.E. 425 (1935) where the court held that a worker suffering from nervous disorders after being lost in a mine suffered an injury by accident. Will we deny compensation under the second injury fund to workers who cannot show that they hurt their back at a particular time rather than over the course of a week? Both workers are disabled. In the case of primary compensability under W. Va. *Code* § 23-4-1, we resolved that question by holding that employee gradually injured on the job is no less the recipient of a personal injury than one who suffers a disabling trauma. *Lilly v. State Workmen's Compensation Commissioner*, 159 W.Va. 613, 225 S.E.2d 214 (1976). While *Lilly* was disposed of under the particular provisions of W. Va. *Code* § 23-4-1, its rationale should not be ignored.

The majority opinion denies benefits to a class of workers which the act is designed to help. This artificial distinction, based on the cause of the injury and not the extent of the disability, can only lead to injustice to

working people. The majority, with its rule, compensates the person injured by his own previous carelessness but denies the same to the helpless person injured by the residuum of a disease.

Mr. Mullins, an underground coal miner of twenty-eight years, came here totally disabled, a victim of severe respiratory impairment, hardly able to breathe. He sought justice through law. He found a perverse reading of the law. He left with bad law and no justice.