294 S.E.2d 184

**Macie DANIELS**

v.

**STATE WORKMEN'S COMPENSATION COMMISSIONER and U. S. Steel Corp.**

No. 15288.

Supreme Court of Appeals of West Virginia.

July 8, 1982.

Timothy G. Leach, Charleston, for appellant.

George W. S. Grove, Jr., Charleston, for appellees.

MILLER, Chief Justice:

This is an appeal by the claimant, Macie Daniels, from a decision of the Workmen's Compensation Appeal Board, affirming a ruling by the Workmen's Compensation Commissioner granting a 15% permanent partial disability award. The Commissioner initially awarded a 30% permanent partial disability for the injury but reduced the award to 15% following hearings on the employer's protest. The claimant contends the Appeal Board misapplied our apportionment statute, W.Va.Code, 23–4–9b, and thereby improperly reduced his permanent partial disability award. This appeal involves the construction of our apportionment statute. For the reasons that follow, we reverse and remand.

On December 16, 1975, the claimant sustained an occupational injury when a large rock struck his left knee. Following the injury his knee was aspirated and he was required to wear a brace. His claim was found compensable. Thereafter, he underwent a medial meniscotomy for the removal of a torn cartilage. The Commissioner referred him to Dr. Colin Craythorne, an orthopedist, for a disability evaluation. Dr. Craythorne estimated permanent partial disability at 30%. In his report of April 13, 1977, he observed that the preoperative status of the claimant's left knee was unknown but stated it was obvious that some amount of arthritis preexisted his 1975 traumatic knee injury. The Commissioner then granted claimant a 30% permanent partial disability award.

The employer protested and had Daniels examined by two physicians. Dr. Tony C. Majestro in a July 15, 1977 report estimated permanent partial disability at 12%. Dr. Majestro was of the opinion that the claimant suffered some degenerative arthritis in both knees prior to the injury but did not express an opinion on whether the preexisting arthritis had resulted in any limitation of movement in either knee. He measured the extension and flexion of both knees and compared the results, finding a relatively minimal amount of impairment in the uninjured right knee. Dr. Majestro concluded that he may have had normal extension in his left knee prior to surgery. He also found a mild atrophy of the left thigh.

The second doctor who examined the claimant on behalf of the employer, Dr. George Callender, Jr., in a report also dated July 15, 1977, estimated permanent partial disability at 15% based on the residual disability resulting from the medial meniscotomy and the effect of the trauma and subsequent surgery on his degenerative osteoarthritis.

The claimant was also examined by Dr. Robert L. Mattill, who, following his examination on September 21, 1978, filed a report expressing the opinion that a 30% permanent partial disability award was warranted. The claimant denied having any previous injury or difficulty with his left knee. Dr. Mattill found the claimant was not able to walk on the toes of the left foot because of flexion limitation in his knee.

Dr. Craythorne testified in a September 1979 protest hearing that he was of the opinion that there were arthritic changes in the left knee caused by the wear and tear of heavy work preexisting his occupational injury. He testified that he would expect some limitation of movement in the claimant's knees due to degenerative arthritis, but his testimony is at best ambiguous as

to whether he was of the opinion that the claimant suffered any impairment in the movement of the knee prior to his injury in 1975. He testified that he had no history of whether the arthritis was asymptomatic prior to the injury. He stated it could have been asymptomatic and offered the opinion that trauma to the knee would cause claimant's preexisting arthritis to become symptomatic.

Following the protest hearings, the Commissioner set aside her prior ruling of 30% and found the claimant had a permanent partial disability of 15%. The Appeal Board affirmed, noting that the physicians' reports were in conflict as to the extent of the claimant's permanent partial disability, and expressly finding that three of the physicians involved in the case specifically agreed that the claimant had a "pre-existing disability" due to arthritis.

Because none of the physicians reduced their overall permanent partial disability recommendation by the amount of disability attributable to the claimant's preexisting disability, the Appeal Board determined that the claimant had not shown that he was entitled to more than a 15% permanent partial disability award in view of provisions of W.Va.Code, 23-4-9b (1971).[1] The claimant contends that W.Va.Code, 23-4-9b, is not applicable to this case because that section does not become operative unless there has been a showing that the claimant had a "definitely ascertainable physical impairment" prior to the December 16, 1975, compensable injury to his left knee.

The employer contends in opposition that the statute was not misapplied by the Appeal Board because the claimant was shown to have a definitely ascertainable physical impairment within the meaning of W.Va.Code, 23-4-9b. The employer further contends, citing *Boggs v. State Work-*

*men's Compensation Commissioner,* 163 W.Va. 413, 256 S.E.2d 890 (1979), that it is not necessary for the impairment to have been estimated or rated prior to the compensable injury in order for the statute to apply. However, *Boggs* is not applicable since it dealt with the second injury life award statute, W.Va.Code, 23-3-1, and involved the question of a prior disease arising from nonindustrial sources which was held not to be covered under W.Va.Code, 23-3-1. Moreover, the inquiry under the second injury life award statute, W.Va. Code, 23-1-1, is whether the definitely ascertainable physical impairment caused by prior injuries when aggregated and combined with the claimant's present injury renders him 85% permanently disabled. *Linville v. State Workmen's Compensation Commissioner,* 160 W.Va. 549, 236 S.E.2d 41 (1977); *Gillispie v. State Workmen's Compensation Commissioner,* 157 W.Va. 829, 205 S.E.2d 164 (1974).

The question of the application of W.Va. Code, 23-4-9b (1971), as it relates to reducing the amount of a permanent partial disability award because of a preexisting physical impairment, has not been extensively discussed. We have held in Syllabus Point 4 of *Gillispie v. State Workmen's Compensation Commissioner, supra,* that this statute by its own terms has no effect on a total permanent disability award under the second injury life award statute, W.Va.Code, 23-3-1. *See also Bostic v. State Workmen's Compensation Commissioner,* 142 W.Va. 484, 96 S.E.2d 481 (1957); *Dillon v. State Workmen's Compensation Commissioner,* 146 W.Va. 269, 119 S.E.2d 89 (1961).

*Gillispie* involved a second injury life award, however, several of its syllabus points did touch on the impact of W.Va. Code, 23-4-9b, as it relates to determining permanent partial disability awards, where

---

1. W.Va.Code, 23-4-9b (1971), provides:
"Where an employee has a definitely ascertainable physical impairment and such employee shall thereafter receive an injury in the course of and resulting from his employment, unless such injury results in total permanent disability within the meaning of section one [§ 23-3-1], article three of this chapter, such physical impairment, and the effect thereof, and an aggravation thereof, shall not be taken into consideration in fixing the amount of compensation allowed by reason of such injury, and such compensation shall be awarded only in the amount that would have been allowable had such employee not had such preexisting physical impairment."

the claimant has a definitely ascertainable physical impairment. In Syllabus Point 8 of *Gillispie* this general statement was made:

"An injured workman's definitely ascertainable pre-existing physical impairments are to be excluded from the Workmen's Compensation Commissioner's consideration in the allocation of disability ratings for injuries resulting in permanent partial awards." [2]

It is obvious that an injured claimant can have a definitely ascertainable physical impairment under W.Va.Code, 23–4–9b, from several sources. Two broad categories are immediately apparent. The first are those arising from prior industrial injuries. In Syllabus Point 6 of *Gillispie*, this rule was stated as to this category of claims:

"The case of *Ball v. Workmen's Compensation Commissioner*, 156 W.Va. 419, 194 S.E.2d 229 (1973), interpreting West Virginia Code, chapter 23, article 4, section 9b, as amended in 1947 and effective until 1971, is authority for the proposition that the Workmen's Compensation Commissioner cannot properly deduct or exclude a prior compensable claim from consideration of a disability rating for a current claim for permanent partial disability under Code 1931, 23–4–9b, as amended, unless the previous impairment had been definitely ascertained and rated, as such, by an award of permanent partial disability allocated in terms of percentage."

Thus, it is clear under *Gillispie* that where an injured claimant has received a compensable injury to an area of his body which has been previously injured in an industrial accident and which has left him with a prior ascertainable physical impairment, this prior injury can be considered under W.Va.Code, 23–4–9b, only if he has received a prior permanent partial disability award for it. Where such prior award has not been made, under Syllabus Point 6 of *Gillispie*, the effect of such prior disability cannot be considered and his current injury is rated as if he had no prior physical disability.

When we turn to the second broad category of definitely ascertainable physical impairments, those that arise from nonindustrial accidents, *Gillispie* does not provide any specificity except to state in general terms that such preexisting definitely ascertainable physical impairments should not be considered when evaluating the degree of permanent partial disability arising from claimant's present injury. Thus, under *Gillispie*, the claimant cannot have the impairment resulting from his present injury increased by considering the preexisting impairment. The present case is an apt illustration of the problem. There is no dispute that the claimant suffered a compensable injury to his left knee. There is suggested in some of the medical reports that the claimant had a preexisting arthritic condition in his knee. The employer contends that in determining his degree of permanent partial disability some deduction from his permanent partial disability should be made because of the preexisting arthritic condition.

While the point has not been discussed in any detail, it seems to us that the phrase "definitely ascertainable physical impairment" must be given its plain and common sense meaning. This is to say that a mere generalized condition or disability will not suffice to come within that term.

We note that our apportionment statute, W.Va.Code, 23–4–9b, is not unique in the Workmen's Compensation field.[3] The general rule as to apportionment statutes, such as contained in W.Va.Code, 23–4–9b (1971), is that they are held not to apply in a case where the prior condition was not physical-

2. Much the same language is contained in Syllabus Point 5 of *Gillispie, supra.*

3. Although it does appear that most states do not have such statutes in their Workmen's Compensation Acts, according to 2 A. Larson's *Workmen's Compensation Law* § 59.21:

"Under the great majority of statutes, the problem in this third form does not arise, but several states have special apportionment provisions in their statutes, under which an employee with a prior disability receives for a subsequent disability only what he would have been entitled to for the latter disability considered alone." (Footnote omitted)

ly disabling. Moreover, to be apportionable, the preexisting definitely ascertainable physical impairment must have independently produced some ascertainable degree of disability, which degree of disability must be stated. *Kroger Co. v. Millsap*, 280 Ala. 531, 196 So.2d 380 (1967); *C. Finkbeiner, Inc. v. Flowers*, 251 Ark. 241, 471 S.W.2d 772 (1971); *Wilson Hargett Construction Co. v. Holmes*, 235 Ark. 698, 361 S.W.2d 634 (1962); *Bozman v. Industrial Commission*, 20 Ariz.App. 390, 513 P.2d 679 (1973); *Gross v. Workmen's Compensation Appeal Board*, 44 Cal.App.3d 397, 118 Cal.Rptr. 609 (1974); *Berry v. Workmen's Compensation Appeals Board*, 68 Cal.2d 786, 69 Cal.Rptr. 68, 441 P.2d 908 (1968) (In Bank); *Stewart-Decatur Security v. Kropp*, 396 So.2d 256 (Fla. Dist.Ct.App.1981); *Dade County School Board v. Walker*, 379 So.2d 1026 (Fla.Dist. Ct.App.1980); *Bethlehem Steel Corp. v. Cummings*, 160 Ind.App. 160, 310 N.E.2d 565 (1974); *Orr v. Department of Labor & Industries*, 10 Wash.App. 697, 519 P.2d 1334 (1974) (recognizing rule); 2 A. Larson's *Workmen's Compensation Law* § 59.22 (1981).

Certainly this rule as to a nonindustrial preexisting definitely ascertainable physical impairment comports with the rule previously expressed in Syllabus Point 6 of *Gillispie* which requires the preexisting industrially caused disability to have been subject to a permanent partial disability award in order to be "ascertainable." In the context of a definitely ascertainable physical impairment resulting from a prior noncompensable condition, the record before the Commissioner must contain specific medical evidence and findings setting forth the percentage of disability attributable to the prior physical impairment. In the case before us, there was no evidence and findings to this effect.

[redacted] We, therefore, conclude that under our apportionment statute, W.Va.Code, 23-4-9b (1971), where there is a preexisting definitely ascertainable physical impairment arising from a nonindustrial injury, such preexisting impairment cannot be deducted from the claimant's present permanent partial disability award if the preexisting impairment is not disabling. Where such preexisting impairment has produced some ascertainable degree of disability, such degree of disability must be stated in order to be apportioned from his current permanent partial disability award.

Of course, the entire concept of our apportionment statute relates to those situations where a current injury is superimposed on a prior physical impairment. And, as we have earlier noted, this statute by its terms has no applicability to the second injury life award statute, W.Va. Code, 23-1-1.

[redacted] In the present case the Appeal Board and the Commissioner erred in finding that the claimant's 30% permanent partial disability award should be reduced to 15% because of the claimant's preexisting arthritic condition. The medical testimony was insufficient to establish that the arthritic condition was in fact disabling nor was there any testimony setting the degree of such disability. As previously noted, these two conditions are essential prerequisites in order to call into play our apportionment statute. W.Va.Code, 23-4-9b.

For the foregoing reasons, the order of the Workmen's Compensation Appeal Board is reversed and the case is remanded to the Commissioner for entry of a final order awarding the claimant a 30% permanent partial disability award.

Reversed and Remanded With Directions.