373 S.E.2d 177

**Betty GALLARDO**

v.

**WORKERS' COMPENSATION COMMISSIONER and CATO Corp.**

**No. 18002.**

Supreme Court of Appeals of West Virginia.

Sept. 16, 1988.

---

Otis R. Mann, Jr., Charleston, for Betty Gallardo.

Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, for Cato Corp.

MILLER, Justice:

The claimant seeks a total and permanent disability award due to the combined effects of a work-related injury which is claimed to have aggravated a preexisting arthritic condition which had not been disabling. The Commissioner and Appeal Board refused to grant a permanent total disability award.

On September 29, 1980, the claimant, who was approximately fifty years old and was employed as the manager of a retail clothing store, fell backward while lifting a mannequin. She apparently struck her back in the fall and experienced severe dorsal back pain and found it extremely difficult to straighten up. She returned to work on October 2, 1980, and was able to continue working despite substantial pain until February, 1981, when she stopped working upon the advice of her physician.

The claimant had a preexisting arthritic condition which had caused her some pain and discomfort; however, it was not disabling. She was able to marry, have children, and work for some thirty-six years primarily as a sales clerk, without missing any work due to her arthritic condition.

Following the 1980 injury, the Workers' Compensation Commissioner referred her

to James A. Heckman, M.D., for an evaluation. In his December, 1983 report, Dr. Heckman found that the claimant had rheumatoid arthritis of the cervical spine and some abnormalities of the dorsal and lumbar spine. Dr. Heckman indicated that it would be an extremely difficult, if not an impossible, task to determine the amount of impairment due to the compensable injury. He did, however, estimate a 10 percent permanent impairment of function related to the compensable injury. Dr. Heckman expressed no opinion concerning the claimant's ability to return to her customary work. The Commissioner granted the claimant a 10 percent permanent partial disability award in January, 1984, based on this recommendation.

The claimant protested and introduced a September, 1984 medical report from George F. Fordham, M.D., whose medical findings concerning the claimant's physical impairment were similar to Dr. Heckman's. He also commented that it would be impossible to "separate out injury related disability with her arthritic disability." Because she had been able to work until the time of the injury, and in the absence of a clear cut line of demarcation, Dr. Fordham estimated that 50 percent of her disability was due to the injury.

Thomas H. Scott, M.D., examined the claimant in May, 1985, on behalf of the employer. Dr. Scott found evidence of rheumatoid arthritis in the cervical spine as well as "rather profound scoliosis involving the dorsal and lumbar spine." He expressed the opinion that the claimant's underlying rheumatoid arthritis had been exacerbated and aggravated by her occupational injury and that she was permanently disabled from gainful employment at the present time. He believed she would definitely need continuing medical treatment and estimated her permanent disability or impairment secondary to her compensable injury at 15 percent of the body as a whole.

The claimant also introduced a vocational report prepared by Phyllis Shapiro, who expressed the opinion that the claimant was permanently and totally disabled based on the claimant's age, limited ninth-grade education, previous employment history, and present medical condition.

The claim was then submitted for decision. The Commissioner by order of July 15, 1986, increased the 10 percent permanent partial disability award previously granted to a 15 percent permanent partial disability award. The Appeal Board affirmed based primarily on the lack of equivocation found in Dr. Scott's report recommending a 15 percent permanent partial disability award. The Appeal Board also rejected the claimant's argument that she was entitled to a permanent total disability award, stating:

"Although the claimant may be permanently and totally disabled, her disability above 15% permanent partial disability is found to have resulted from her noncompensable disease which cannot be included in an award of permanent total disability. W.Va.Code § 23–3–1 provides that combined effects of a previous injury, irrespective of its compensability, and a compensable injury can give rise to a second injury award, and this provision includes compensable diseases, but excludes non-compensable diseases. Because the claimant's pre-existing disease was non-compensable it cannot be considered in evaluating the claimant for a permanent total disability award...."

Our decisions applying the second injury fund statute, W.Va.Code, 23–3–1,[1] have

1. W.Va.Code, 23–3–1, provides, as pertinent here:

"If an employee who has a definitely ascertainable physical impairment, caused *by a previous injury, irrespective of its compensability,* becomes permanently and totally disabled through the combined effect of such previous injury and a second injury received in the course of and as a result of his employment, the employer shall be chargeable only for the compensation payable for such second injury: Provided, that in addition to such compensation, and after the completion of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for permanent total disability out of a special reserve of the surplus fund known as the second injury reserve, created in the manner hereinbefore set forth." (Emphasis added).

consistently held that the claimant's preexisting impairment must have been the result of an injury, not a disease, unless it is an occupational disease as defined in W.Va. Code, 23-4-1.[2] In *Mullins v. State Workmen's Compensation Comm'r*, 165 W.Va. 194, 271 S.E.2d 771 (1980), and *Boggs v. State Workmen's Compensation Comm'r*, 163 W.Va. 413, 256 S.E.2d 890 (1979), we followed this interpretation of the second injury fund statute originally enunciated in Syllabus Point 2 of *Bannister v. State Workmen's Compensation Comm'r*, 154 W.Va. 172, 174 S.E.2d 605 (1970):

"In order to obtain workmen's compensation benefits for total disability resulting from a second injury coupled with a non-compensable definitely ascertainable physical impairment, such physical impairment must have been caused from an injury and not a disease unless such physical impairment was an occupational disease proved to have been proximately caused by employment."

The claimant in *Mullins* was a coal miner who sought a permanent total disability award due to the combined effects of occupational pneumoconiosis, for which he had been granted a 40 percent permanent partial disability award, and a preexisting calcification of his lung. The Court denied the award under the *Bannister* rule, finding no evidence that the calcification was work related or anything other than an ordinary disease of life.

In *Boggs*, the claimant received a 50 percent permanent partial disability award for occupational pneumoconiosis. Later, he requested to reopen the claim to consider the combined effects of a prior impairment together with his occupational pneumoconiosis. The claimant's prior impairment involved tuberculosis which had resulted in a collapsed lung. It was undisputed that the combination of the residual effects of the collapsed lung and his occupational pneumoconiosis rendered him totally disabled. This Court in reliance on *Bannister* affirmed the Appeal Board's denial of a permanent total disability award on the basis that the collapsed lung resulted from a disease and not from a previous injury.[3]

In a number of cases,[4] we have recognized a relationship between our apportionment statute, W.Va.Code, 23-4-9b,[5]

---

2. W.Va.Code, 23-4-1, provides in pertinent part: "For the purposes of this chapter the terms 'injury' and 'personal injury' shall include occupational pneumoconiosis and any other occupational disease, as hereinafter defined...."

3. In *Boggs*, we noted the inequity of the language of the second injury statute which gives second injury relief to a prior injury, but not impairment from a diseased condition:

"Since it is obviously the intent of the Legislature to encourage, or at least not discourage, the hiring of the handicapped, *McClanahan v. Workmen's Compensation Commissioner*, [158] W.Va. [161], [163], 207 S.E.2d 184, 186 (1974), we might question if we were the Legislature whether it is not inequitable to discriminate between the diseased workman and the injured workman. That, however, has been the design of the Workmen's Compensation system since its inception, and our responsibility is to apply the law. The scope of the Act's application to disease has been narrowly confined to occupational disease and there is no suggestion that the Legislature intended this narrow policy to be broadened by bringing previous disease related disabilities within the scope of the second injury statute." 163 W.Va. at 417, 256 S.E.2d at 893.

4. *E.g., Mullins v. State Workmen's Compensation Comm'r*, 165 W.Va. 194, 271 S.E.2d 771 (1980);

*Boggs v. State Workmen's Compensation Comm'r*, 163 W.Va. 413, 256 S.E.2d 890 (1979); *Gillispie v. State Workmen's Compensation Comm'r*, 157 W.Va. 829, 205 S.E.2d 164 (1974). Despite *pari materia* language in these cases, it is clear that the only purpose of inserting a reference to the second injury life award statute in the apportionment statute, W.Va.Code, 23-4-9b, was to make it plain that the apportionment statute did not apply to second injury life awards.

5. The term "apportionment" is used because the statute is designed to separate out preexisting disability from the disability arising from the current compensable injury where less than total disability is sought. *See Bostic v. State Compensation Comm'r*, 142 W.Va. 484, 488, 96 S.E.2d 481, 484 (1957); *see generally* 2 A. Larson, Workmen's Compensation Laws § 59.21 (1987). At the time of the claimant's 1980 injury, W.Va.Code, 23-4-9b (1971), provided:

"Where an employee has a definitely ascertainable physical impairment and such employee shall thereafter receive an injury in the course of and resulting from his employment, unless such injury results in total permanent disability within the meaning of section one [§ 23-3-1], article three of this chapter, such physical impairment, and the effect thereof,

and our second injury statute, W.Va.Code, 23–3–1. The relationship arose because the apportionment statute refers to the second injury statute. The language of the apportionment statute makes it clear that it does not apply to second injury life awards. The reason is obvious: a second injury life award claimant must of necessity have prior injuries on which to build the life award. The second injury statute clearly intends this result as the claimant must show he has become "permanently and totally disabled through the combined effect of such previous injury and a second injury" received in his employment. W.Va.Code, 23–3–1.[6] If the apportionment statute were to apply, it would negate the second injury statute by permitting the claimant's earlier disabilities to be excluded from consideration in a second injury life award claim. Stated another way, our apportionment statute does not apply to the second injury statute, as we stated in Syllabus Point 4 of *Gillispie:*

"West Virginia Code, chapter 23, article 4, section 9b, as amended, expressly excludes from its provisions the rating of compensable injuries resulting in a lifetime award of total permanent disability within the meaning of the second injury provision of West Virginia Code, chapter 23, article 3, section 1, as amended."

Although the Appeal Board correctly concluded that the second injury fund statute was not applicable in this claim, the claimant did not seek a life award payable from the second injury fund. The claimant's contention below was that she was entitled to a total permanent disability

award under the general rule stated in Syllabus Point 2 of *Charlton v. State Workmen's Compensation Comm'r,* 160 W.Va. 664, 236 S.E.2d 241 (1977):

"'A diseased workman who in the course of and resulting from his employment receives an injury, which aggravates or accelerates the disease, to the extent of causing a disability sooner than would otherwise have occurred, is entitled to compensation from the Workmen's Compensation Fund.' Syllabus point three, *Manning v. State Compensation Commissioner,* 124 W.Va. 620, 22 S.E.2d 299 (1942)."

In *Charlton,* the claimant had been required to stand in mine water which had been treated with magnetite and sulphuric acid and also contained oil, kerosene, and other chemicals. Over a five- or six-month period of exposure, the claimant's feet became ulcerated. The medical testimony suggested that this was a result of an aggravation of a preexisting blood vessel disease known as "Buerger's disease." The Commissioner and Appeal Board found that the claimant's working in mine water had perhaps aggravated his preexisting disease, but concluded the disease and accompanying disability did not result from employment. We reversed finding that it was compensable.

In *Charlton,* we cited *Manning* and *Hall v. State Compensation Comm'r,* 110 W.Va. 551, 159 S.E. 516 (1931), where the claimants each had diseased blood vessels. Each had sustained a rather modest traumatic injury. In *Manning,* the claimant

and an aggravation thereof, shall not be taken into consideration in fixing the amount of compensation allowed by reason of such injury, and such compensation shall be awarded only in the amount that would have been allowable had such employee not had such preexisting physical impairment."

In Syllabus Point 6 of *Gillispie, supra,* this Court held that the apportionment statute, W.Va.Code, 23–4–9b, could not be used to deduct prior compensable injuries on which no percentage of disability rating had been made. In *Daniels v. State Workmen's Compensation Comm'r,* 170 W.Va. 381, 294 S.E.2d 184 (1982), we construed the language of the statute to require that the preexisting disability must have resulted in

some physical impairment and the degree of disability must be stated in order to apportion it from the current disability. Following *Daniels,* the legislature in 1986 amended W.Va.Code, 23–4–9b. 1986 W.Va. Acts ch. 171. This amendment appears to narrow the scope of *Daniels.* We have traditionally held that it is the compensation act existing at the time of the injury that gives rise to the claimant's substantive rights. *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975); *Ball v. State Workmen's Compensation Comm'r,* 156 W.Va. 419, 194 S.E.2d 229 (1973). We need not consider the effect of the 1986 amendments.

**6.** See note 1, *supra,* for the text of W.Va.Code, 23–3–1.

had struck the palm of his hand against a throttle bruising it. In *Hall*, the claimant injured his big toes. However, as a result of the underlying blood vessel condition, the traumatic injuries aggravated the underlying conditions causing quite severe incapacity. In *Manning*, the index finger had to be amputated, while in *Hall*, both legs were amputated below the knee. In holding the claim in *Hall* compensable, the Court stated:

> "If the loss of claimant's limbs were due to the disease, unaggravated or unaccelerated by any fortuitous event which may be denominated an accident, then, in view of the statute, the injury is not compensable. If, however, the injury to the great right toe lighted up such condition, and incapacitated him from performing his duties as an employee, claimant is entitled to compensation." 110 W.Va. at 552, 159 S.E. at 517.

■ The employer, in essence, contends that the *Charlton* line of cases deals with compensability, not the degree of permanent disability, and are thus not authority for granting a total permanent disability award in this case. The employer also argues that the claimant has only shown a 15 percent permanent partial disability attributable to the injury, and submits that it would be inequitable to charge it for the disability attributable to the claimant's preexisting arthritis. Finally, the employer argues that under the apportionment statute, W.Va.Code, 23-4-9b, as amended in 1986, the claimant is not entitled to compensation for any disability caused by a prior disease.

The argument that the *Charlton* line of cases applies only to compensability is without merit. The real issue in these cases was one of the degree of disability. The issue, stated another way, was whether an underlying diseased condition when acted upon by a traumatic injury that produces severe disability could be included within the disability rating. We answered that it could.

The employer may not utilize the 1986 version of the apportionment statute, W.Va.Code, 23-4-9b, since it was not in effect on the date of the injury.[7] Even if the claimant were not totally disabled, there is no showing of any preexisting disablement from the arthritic condition as required by Syllabus Point 3 of *Daniels*, which states, in part, "such preexisting impairment cannot be deducted from the claimant's present permanent partial disability award if the preexisting impairment is not disabling."[8]

We, therefore, reverse the final decision of the Workers' Compensation Appeal Board and remand this case with the direction that an order be entered granting the claimant a permanent total disability award.

REVERSED AND REMANDED.

---

7. *See* note 5, *supra.*

8. The full text of Syllabus Point 3 of *Daniels* states:

> "Under our apportionment statute, W.Va. Code, 23-4-9b (1971), where there is a preexisting definitely ascertainable physical impairment arising from a nonindustrial injury, such preexisting impairment cannot be deducted from the claimant's present permanent partial disability award if the preexisting impairment is not disabling. Where such preexisting impairment has produced some ascertainable degree of disability, such degree of disability must be stated in order to be apportioned from his current permanent partial disability award."