Gary E. **CROSLAND**, Petitioner,

v.

**BOARD OF REVIEW OF THE INDUS-TRIAL COMMISSION OF UTAH; Young Electric Sign Co.; and Smith Administrators, Respondents.**

**No. 910291–CA.**

Court of Appeals of Utah.

March 20, 1992.

Virginius Dabney (argued), Dabney & Dabney, P.C., Salt Lake City, for petitioner.

J. Angus Edwards (argued), Purser, Okazaki, & Berrett, Salt Lake City, for respondents.

Before BILLINGS, JACKSON, and RUSSON, JJ.

## OPINION

JACKSON, Judge:

Petitioner, Gary Crosland (Crosland), seeks review of an Industrial Commission order awarding him compensation for one-half of his industrial accident injury and denying compensation for the remainder. Crosland was denied compensation for the half of the injury that ensued from the accident's aggravation of a preexisting asymptomatic condition. We reverse.

## BACKGROUND

On February 9, 1989, Crosland injured his lower back as he attempted to help another employee move a 200–pound sign while working for Respondent, Young Electric Sign Company. Crosland felt immediate pain when, moving the sign around the corner, he twisted his upper torso. When he could barely walk the next day at work, his employer sent him for medical treatment. Crosland's treating physician concluded that Crosland had a preexisting asymptomatic defect and that the industrial accident caused the defect to become acute and symptomatic. The insurance adjustor's examining physician determined that Crosland had preexisting, asymptomatic spondylolysis (breaking down or dissolution of the body of the vertebra) and spondylolisthesis (forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it), adding that all the present symptoms Crosland suffered were related to the industrial injury. Crosland had never had any back problems or required medical treatment for his back prior to this accident.

The medical panel appointed by the Administrative Law Judge (ALJ) found that following the accident, Crosland had a twenty percent permanent partial impairment of the whole body. The panel attributed half, or ten percent, permanent partial impairment, to the industrial accident and half to the asymptomatic preexisting condition medically aggravated by the accident. The panel commented that "[i]t is entirely possible he could have gone on for an indefinite period had it not been for the event described, but it is unlikely he would have had the degree of difficulty had he not had the developmental abnormality." Based on this evaluation, the ALJ denied Crosland compensation for the ten percent permanent partial impairment attributable to the preexisting asymptomatic condition aggravated by the industrial accident, thus allowing compensation only for the ten percent whole body permanent partial impairment attributable to the industrial accident itself. The Industrial Commission affirmed.

Crosland appeals, arguing that he should receive compensation for the entire twenty percent whole person permanent partial impairment caused by the industrial accident's aggravation of the preexisting asymptomatic condition.

## STANDARD OF REVIEW

This proceeding is governed by the Utah Administrative Procedures Act (UAPA), Utah Code Ann. §§ 63–46b–1 to –22 (1989 & Supp.1991).[1] Section 63–46b–16(4)(d) governs the scope of our review of the Industrial Commission's order, allowing relief if Crosland has been "substantially prejudiced" because "the agency has erroneously interpreted or applied the law." In *Morton Int'l, Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581, 587–89 (Utah 1991), the supreme court held that under this section we may review for correctness and need not defer to the agen-

[1]. The UAPA governs all administrative proceedings commenced after January 1, 1988.

cy's interpretation unless there is "a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language."[2] *Id.* at 589. When legislative intent can be discerned, however, we give the agency's interpretation no deference. *Id.; accord Mor–Flo Indus. v. Board of Review,* 817 P.2d 328 (Utah App.1991). This case requires an interpretation of the 1988 amendment to the Workers' Compensation Act and thus presents a question of statutory construction and legislative intent which we may review for correctness. Under this standard, to afford relief we must find that the Commission erroneously interpreted the law to Crosland's substantial prejudice.

## ANALYSIS

■■■■■■■ The parties agree that Crosland suffered an industrial injury and that he has satisfied both the medical and legal cause requirements of *Allen v. Industrial Comm'n,* 729 P.2d 15 (Utah 1986).[3] The sole issue on appeal is whether Crosland should receive compensation for the ten percent asymptomatic preexisting condition which was aggravated by his industrial accident and contributed to the injury. Utah courts have followed the well-established common law rule that when an industrial accident lights up or aggravates a preexisting deficiency or disease, the resulting disability is compensable as long as the industrial accident was the medical and legal cause of the injury. *Nuzum v. Roosendahl Const. and Mining Corp.,* 565 P.2d 1144, 1146 (Utah 1977); *Allen,* 729 P.2d at 25 (modifying *Nuzum* to add the higher standard for legal cause when preexisting

conditions are involved); *Virgin v. Board of Review of the Indus. Comm'n,* 803 P.2d 1284, 1288 (Utah App.1990); *see also Giles v. Industrial Comm'n,* 692 P.2d 743 (Utah 1984) (employee received compensation for detached retina resulting from work-related accident, even though employee's prior cataract surgery rendered him somewhat predisposed to retinal detachment). This rule is consistent with the stated policy of liberally construing and applying the Utah Workers' Compensation Act to provide coverage, accomplishing the Act's purpose of affording financial security to injured employees. *State Tax Comm'n v. Industrial Comm'n,* 685 P.2d 1051, 1053 (Utah 1984) (citation omitted). In addition, the rule comports with Professor Larson's comments:

> Nothing is better established in compensation law than the rule that, when industrial injury precipitates disability from a latent prior condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable, and except in states having special statutes on aggravation of disease, no attempt is made to weigh the relative contribution of the accident and the preexisting condition to the final disability or death. Apportionment does not apply in such cases, nor in any case in which the prior condition was not a disability in the compensation sense.

2 Larson, *Workmen's Compensation Law,* § 59.22(a) (1989) (footnotes omitted).

Juxtaposed against this strong common law background allowing an employee compensation for aggravation of a preexisting latent condition is the policy of freeing an

**2.** A legislative grant of discretion might be implied when the terms of the statute leave the specific question at issue unresolved, allowing for more than one permissible reading of the statute. The choice among permissible interpretations might then be deemed a policy choice for the agency, and we would not substitute our judgment absent an abuse of the delegated discretion. *Morton Int'l,* 814 P.2d at 587–89.

**3.** To prove legal cause under the higher standard of *Allen,* a claimant with a preexisting condition which contributes to the injury must show that his work-related exertion was unusual

or extraordinary, in excess of the normally expected level of nonemployment activity for men and women in the latter half of the twentieth century. *Allen,* 729 P.2d at 25–26. If the claimant has no contributory preexisting condition, a usual or ordinary exertion suffices to prove legal cause. *Id.* (citing 1B Larson, *Workmen's Compensation Law* § 38.83(a) & (b) (1991)). That Crosland's exertion in lifting the sign was greater than normal is undisputed in this case. Consequently, we need not evaluate the application of the *Allen* rule under the amended statute.

employer from liability for an employee disability existing prior to the work-related accident. For permanent partial impairments, this policy is effectuated by the medical and legal causation requirements of *Allen*.[4] In addition, by amendment effective July 1, 1988, the legislature added the following language to the Workers' Compensation Act: "Permanent partial disability compensation may not be paid for any *permanent impairment* that existed prior to an industrial accident." Utah Code Ann. § 35–1–66 (1988) (emphasis added). We are now called upon to decide whether the asymptomatic weakness in Crosland's back was a "permanent impairment" within the meaning of the statute at the time of the injury.[5] The stated purpose of this amendment to section 35–1–66 is to clarify "that permanent partial disability compensation entitlements are based on physical impairment caused by an industrial accident." Laws of Utah ch. 116 H.B. no. 218 preamble. Crosland urges us to interpret the term "permanent impairment" to exclude asymptomatic conditions such as his and to include only conditions "[connoting] some deterioration or diminishment in function." This definition comports with the use of the word "permanent impairment" at the beginning of amended section 35–1–66, stating, with our emphasis, that an employee who receives a *"permanent impairment* as a result of an industrial accident ... may receive a permanent partial disability award." This wording implies

functional "permanent impairment" and does not include asymptomatic nonratable conditions.

This interpretation is also in line with decisions in other states, which have allowed for compensation under similar statutes. Alabama courts, for example, have refused to require employees to accept reduced compensation for injuries resulting from aggravation of preexisting conditions. *See, e.g., International Paper Co. v. Rogers*, 500 So.2d 1102, 1103 (Ala.Civ.App. 1986) (construing term "infirmity" in statute similar to Utah's to allow unreduced compensation for employee with preexisting asymptomatic spondylolisthesis: "[i]t is a fundamental principle that an employer take[s] the employee subject to his physical condition when he starts his employment"); *see also Terwilliger v. Green Fuel Economizer, Inc.*, 97 A.D.2d 572, 468 N.Y.S.2d 73, 74 (1983) (no apportionment when preexisting condition was dormant and not disabling); *Daniels v. State Workmen's Compensation Comm'r*, 294 S.E.2d 184, 188 (W.Va.1982) (under state apportionment statute, preexisting impairment must be definitely ascertained and rated; general rule is that apportionment statutes do not apply when "the prior condition was not physically disabling").

Like other states, Utah has not apportioned between the employer and the employee liability for symptoms resulting from one industrial accident.[6] We find no

---

**4.** For permanent total disabilities, the policy is accomplished by providing the employer contribution from the Employers' Compensation Fund. *See* note 6.

**5.** A 1991 amendment to the Utah Workers' Compensation Act defines the terms "impairment" and "disability." " 'Disability' means becoming medically *impaired as to function*." Utah Code Ann. § 35–1–44(4) (Supp.1991) (emphasis added). " 'Impairment' is a purely medical condition reflecting *any anatomical or functional abnormality* or loss." Utah Code Ann. § 35–1–44(6) (Supp.1991) (emphasis added). Because these statutory definitions were not in effect at the time of Crosland's injury, we need not decide their applicability to the wording of the 1988 amendment. Instead we rely on the law as it existed at the time of the injury.

**6.** Apportionment has only occurred between the employer and the Employers' Compensation

Fund under Utah Code Ann. § 35–1–69 (1988), which, with our emphasis, states in pertinent part:

> If an employee, who has at least a *10% whole person permanent impairment* from any cause or origin, subsequently incurs an additional impairment by an accident arising out of and in the course of the employee's employment, and if the additional impairment results in permanent *total* disability, the employer or its insurance carrier and the Employers' Reinsurance Fund are liable for the payment of benefits as follows: ...

This provision thus fully compensates an employee when an industrial accident and a preexisting impairment result in permanent total disability, without imposing the complete burden of compensation for the total disability on the employer. The purpose of this statutory scheme appears to be to resolve the problems arising when the sum of two injuries is greater

reason to conclude that section 35–1–66 as amended requires apportionment of liability for aggravation of an asymptomatic condition. Nor do we find that the amendment does more than to clarify that an employer is free from liability for an employee's preexisting ratable functional impairment not caused by the industrial accident. Based on the usage of the term "permanent impairment" in the statute, and on Utah case law at the time of the injury, which allowed full compensation for aggravation of a preexisting asymptomatic condition, we believe the term "permanent impairment" should be interpreted to refer to a ratable physical condition exhibiting some diminished function. Because Crosland's back was completely functional prior to the industrial accident and could have continued to be functional absent the accident, we conclude that apportionment was inappropriate in this case and that the Commission erroneously failed to award full compensation for Crosland's twenty percent whole person permanent partial impairment caused by the industrial accident. We reverse the order of the Industrial Commission.

BILLINGS and RUSSON, JJ., concur.

than the parts (e.g., an industrial accident resulting in blindness in one eye of a worker already blind in the other eye, thus creating permanent total disability), without discouraging employers from hiring handicapped persons. The employee is compensated for the permanent total disability, but the employer is partially compensated from the fund so that the cost to the employer is not as severe. *E.g., Hall v. Industrial Comm'n,* 710 P.2d 175, 178 (Utah 1985) (under this section, a showing of causal connection between the preexisting impairment and the industrial injury is not required; only that they cumulatively result in substantially greater disability); *see* 2 Larson, *Workmen's Compensation Law,* § 59.31(a) (1989). In making its apportioned award, the Commission relied upon *Nyrehn v. Industrial Comm'n,* 800 P.2d 330 (Utah App.1990), *cert. denied,* 815 P.2d 241 (Utah 1991). This reliance is misplaced because the *Nyrehn* case merely apportions between the employer and the fund under this section and does not address the issue of apportionment between the employer and the employee.