2016 UT App 12

# THE UTAH COURT OF APPEALS

LETICIA PETERSON,
Petitioner,

*v.*

LABOR COMMISSION, FRESH MARKET STORE #2395,
AND PHOENIX INSURANCE CO.,
Respondents.

Memorandum Decision
No. 20141063-CA
Filed January 22, 2016

Original Proceeding in this Court

Loren M. Lambert, Attorney for Petitioner

Jaceson R. Maughan, Attorney for Respondent
Labor Commission

Mark R. Sumsion and Cody G. Kesler, Attorneys
for Respondents Fresh Market Store #2395 and
Phoenix Insurance Co.

JUSTICE JOHN A. PEARCE authored this Memorandum Decision, in
which JUDGES GREGORY K. ORME and STEPHEN L. ROTH
concurred.[1]

PEARCE, Justice:

¶1      Leticia Peterson seeks judicial review of the Utah Labor
Commission Appeals Board's (the Board) order denying her

---

1. Justice John A. Pearce began his work on this case as a
member of the Utah Court of Appeals. He became a member of
the Utah Supreme Court thereafter and completed his work on
the case sitting by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 3-108(3).

claims for workers' compensation benefits. We conclude that Peterson is entitled to compensation for the industrial accident she suffered during her employment at Fresh Market Store #2395 (Fresh Market). We therefore set aside the Board's order and return this matter to the Labor Commission for the entry of such an award.

¶2　Peterson began working at Fresh Market, a supermarket, as a cake decorator in February 2005.[2] Her regular duties included lifting and moving cakes and buckets of frosting. The cakes weighed about four pounds each, and the buckets of frosting weighed as much as forty-two pounds. On an average work day, Peterson decorated thirty cakes. Peterson's duties also included general bakery work such as bagging rolls, putting away frozen goods, and cleaning.

¶3　On October 5, 2011, Peterson suffered a workplace injury to her right rotator cuff. The injury occurred as Peterson was reaching with her right arm to remove a tray of cakes from a rack located directly behind her work table. The tray held four cakes, weighed over sixteen pounds, and was positioned about shoulder-height on the rack. Peterson twisted around and lifted the tray by placing her right palm underneath it while stabilizing

———————————

2. When Peterson was hired in 2005, the supermarket was under different ownership and was operated as an Albertsons. Around the end of 2009, Associated Food Stores purchased the store and renamed it Fresh Market. It thus appears that Peterson's actual employer may be Associated Food Stores, rather than the establishment it operates as Fresh Market. However, neither the change of ownership nor any confusion over the name of Peterson's employer (as evidenced by Peterson listing the Fresh Market store where she worked in the caption of her pleading) affects our resolution of this matter.

it with her left hand.[3] As she turned back to place the tray on the table, she felt an instant burning pain in her shoulder that caused her to drop the tray of cakes. An MRI exam revealed that Peterson had suffered a torn rotator cuff in her right shoulder.

¶4 Peterson filed an application for hearing with the Utah Labor Commission, asserting an industrial accident claim and seeking workers' compensation benefits. An administrative law judge (the ALJ) took Peterson's testimony about the circumstances surrounding her injury. The ALJ referred the matter to a medical panel to determine whether Peterson had a preexisting condition that contributed to the injury. The medical panel found that Peterson did have a preexisting shoulder condition in her right shoulder, which contributed to the injury. In light of the medical panel's opinion, the ALJ evaluated Peterson's industrial accident claim under *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), to determine whether Peterson's "work at Fresh Market on October 5, 2011, involved some unusual or extraordinary exertion over and above the usual wear and tear exertions of nonemployment life." The ALJ found that the work activities that caused Peterson's injury were not unusual or extraordinary and were therefore not the legal cause of her injury. For this reason, the ALJ denied Peterson's industrial accident claim.

¶5 Peterson appealed the ALJ's ruling to the Board, arguing that the ALJ erroneously applied the *Allen* test to her claim. While this appeal was pending, Peterson filed another application for hearing, this time alleging that long-term wear and tear on her shoulder occurring during her employment at Fresh Market constituted an occupational disease that manifested itself in the October 2011 injury. Without reference to

---

3. During her testimony, Peterson agreed with her counsel's characterization that she lifted the tray "palm up, thumb towards your shoulder, like a waiter carries a plate of food."

Peterson's occupational disease claim, the Board set aside the ALJ's ruling because it could not determine whether Peterson's preexisting condition arose from her work at Fresh Market or from other causes. The Board remanded the industrial accident claim to the ALJ for further findings about the cause and timing of Peterson's preexisting condition in relation to her employment at Fresh Market.

¶6    On remand, the ALJ consolidated Peterson's industrial accident and occupational disease claims into a single proceeding and again referred the matter to a medical panel. The medical panel found:

> [T]he work activities at Fresh Market from February 1, 2005 [until the injury] contributed 40% of the causation or aggravation associated with the right shoulder condition. The remaining 60% of causation has been contributed by other factors, equally divided between occupational repetitive motion of the shoulder at previous jobs and personal factors (such as genetics and rotational movement of the shoulder while doing personal activities).

In other words, the medical panel found that Peterson's preexisting shoulder condition was 40% attributable to her work at Fresh Market, 30% attributable to her other jobs, and 30% attributable to personal, non-work factors.

¶7    Relying on the panel's findings, the ALJ concluded that Peterson's claims required analysis as an occupational disease rather than as an industrial accident, because Peterson's shoulder condition was "due to her work activities and personal factors over many years." The ALJ awarded Peterson workers' compensation benefits for occupational disease but reduced her temporary total disability compensation by 60% because only

40% of her occupational disease was caused by her work at Fresh Market.

¶8     Fresh Market appealed the occupational disease award to the Board, arguing that Peterson should not have been allowed to pursue an occupational disease claim after the ALJ rejected her industrial accident claim based on the same injury. The Board rejected Fresh Market's arguments and concluded that Peterson's occupational disease claim was a permissible amendment. However, the Board concluded that Peterson's injury could not be characterized as an occupational disease, because her shoulder condition had been asymptomatic for many years and the injury was an acute injury that occurred when Peterson lifted the tray of cakes on October 5, 2011.

¶9     Analyzing Peterson's claim as one for industrial accident benefits, the Board concluded that Peterson was required to meet the *Allen* "unusual or extraordinary exertion" test because a preexisting condition contributed to her injury. The Board characterized the mechanism of Peterson's injury as "lifting a 16.5-pound tray and turning to place it on a table." The Board concluded that this exertion was not unusual or extraordinary and that Peterson had therefore not shown legal causation under *Allen*. Because Peterson had not shown legal causation, the Board denied Peterson's industrial accident claim. One Board member dissented, arguing that the *Allen* test should not apply under the circumstances but that if *Allen* did bar Peterson's industrial accident claim, she should be able to receive benefits on her occupational disease claim.

¶10   Peterson now seeks judicial review, raising three arguments. First, she argues that the *Allen* test should not apply to her industrial accident claim, because her employment at Fresh Market contributed more to her preexisting condition than either her prior work history or personal factors. Second, she argues that if the *Allen* test does apply, her injury satisfied that test because it resulted from unusual and extraordinary exertion.

Third, she argues that if her industrial accident claim fails, she is entitled to compensation under her occupational disease theory.

¶11    We need not address Peterson's first and third arguments, because we conclude that she has established legal causation of her injury under the more-stringent *Allen* test. Thus, she is entitled to industrial accident benefits regardless of whether *Allen* applies. And because Peterson is entitled to compensation under her industrial accident theory, we need not determine whether she would also be entitled to occupational disease benefits on the facts presented.[4]

¶12    The *Allen* test for legal causation examines "[w]hether an injury arose out of or in the course of employment . . . where the employee brings to the workplace a personal element of risk such as a preexisting condition." *Allen v. Industrial Comm'n*, 729 P.2d 15, 25 (Utah 1986). "Just because a person suffers a preexisting condition, he or she is not disqualified from obtaining compensation." *Id.* However,

> [t]o meet the legal causation requirement, a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition. *This additional element of risk in the workplace is usually supplied by an exertion greater than that undertaken in normal, everyday life.* This extra exertion serves to offset the preexisting condition of the employee as a likely cause of the injury, thereby eliminating claims for impairments resulting from a personal risk rather than exertions at work.

---

4. Peterson makes no claim that she is entitled to both industrial accident benefits and occupational disease benefits.

*Id.* (emphasis added)*.* "Thus, where the claimant suffers from a preexisting condition which contributes to the injury, an unusual or extraordinary exertion is required to prove legal causation." *Id.* at 26.

¶13  Our analysis of Peterson's injury under the *Allen* test "involves two steps: first, we must characterize the employment-related activity that precipitated [her] injury, taking into account the totality of the circumstances; and second, we must determine whether this activity is objectively unusual or extraordinary." *Murray v. Labor Comm'n*, 2013 UT 38, ¶ 48, 308 P.3d 461. The first step "is a matter of fact," but "the parties in this case do not dispute the circumstances surrounding [Peterson's] accident." *See id.* ¶ 49. Thus, we need only determine whether Peterson's activity when she was injured—twisting and reaching behind herself with her extended right arm to place her palm under a sixteen-pound cake tray to lift and move it from a shoulder-height rack to a mid-chest height table—is "objectively unusual or extraordinary." *Id.* ¶ 48. We make this determination giving no deference to the Board's conclusion. *See id.* ¶ 40 ("'[U]nusualness' . . . is an objective legal standard that we are in a better position to analyze than the [Board].").

¶14  "Utah courts have deemed employment activities to be 'unusual' or 'extraordinary' when they require an employee to endure jumping, lifting great weight, or repetition." *Id.* ¶ 51. Peterson's injury was not caused by any one of these factors in isolation. The injury did not involve jumping. It also did not involve lifting an amount of weight that would, standing alone, satisfy *Allen* because of its magnitude. *Compare Crosland v. Industrial Comm'n*, 828 P.2d 528, 529, 530 n.3 (Utah Ct. App. 1992) (concluding that moving a two-hundred-pound sign qualified as an unusual activity), *with Allen*, 729 P.2d at 26 n.8 ("'[T]he usual wear and tear of life . . . certainly includes lifting objects weighing 20 pounds such as bags of golf clubs, minnow pails, and step ladders.'" (quoting Arthur Larson, *Workmen's Compensation* § 38.83, at 7-280-81 (1986) (footnotes omitted))).

And it did not involve the kind of constant repetition that has previously served to show legal causation under *Allen*.[5] *See Stouffer Foods Corp. v. Industrial Comm'n*, 801 P.2d 179, 183 (Utah Ct. App. 1990) (concluding that "applying repeated or constant pressure" to the grips of high-pressure, gasoline-type hoses is not a "typical non-employment activity").

¶15    However, "in determining whether the employment activity that precipitated [Peterson's] injury was 'unusual' under *Allen*, we must consider the totality of the circumstances." *See Murray*, 2013 UT 38, ¶ 47. Although Peterson was not lifting a great amount of weight when she was injured, it was a significant amount of weight to lift in the awkward manner that Peterson lifted it. We have, in the past, characterized the lifting of relatively little weight as unusual or extraordinary exertion when the manner in which the weight was lifted was unusual or awkward. *See American Roofing Co. v. Industrial Comm'n*, 752 P.2d 912, 915 (Utah Ct. App. 1988) (upholding a finding of unusual or extraordinary activity based on "the weight [lifted], together with *the manner in which* [*the employee*] *lifted the bucket* and the fact that the bucket snagged" (emphasis added)).

¶16    In *American Roofing Co. v. Industrial Commission*, 752 P.2d 912 (Utah Ct. App. 1988), the claimant "attempted to unload a thirty pound bucket of debris out of his truck" by "lean[ing] over the bed and lift[ing] the bucket." *Id.* at 913. We have no difficulty concluding that Peterson similarly engaged in unusual or extraordinary exertion when she reached behind her with her arm extended "like a waiter," placed her palm under the tray,

---

5. There is some suggestion in the record that Peterson regularly removed cake trays from the rack and moved them to her work table. However, the record does not indicate the frequency of such activity, nor does it indicate that Peterson ordinarily transferred the trays with the same extended-arm technique that resulted in her October 5, 2011 injury.

lifted the cake tray from shoulder height, and returned forward while lowering the tray to her work table with her supinated and extended arm. In both instances, the unusual and awkward manner in which the employee lifted an otherwise-manageable amount of weight resulted in an injury. Looking at the totality of the circumstances of Peterson's injury, we are satisfied that her lifting of the sixteen-pound cake tray in the peculiar manner that she did "contributed something substantial to increase the risk [she] already faced in everyday life because of [her preexisting] condition."[6] *See Allen*, 729 P.2d at 25.

¶17    We conclude that Peterson's industrial accident resulted from unusual or extraordinary exertion and that Peterson has therefore established that her Fresh Market employment was the legal cause of her injury, regardless of her preexisting shoulder condition. We therefore set aside the Board's order and return this matter to the Labor Commission for a determination and award of industrial accident benefits.

────────────

6. The parties have not identified any ordinary life activity that would necessitate lifting and moving such a weight in a similar manner. When asked to identify such an activity at oral argument, Fresh Market's counsel suggested that Peterson's motion was similar to removing carry-on luggage from an overhead bin on an airplane. The analogy is not without its appeal. Carry-on luggage can certainly weigh sixteen pounds, and retrieving luggage from overhead bins is an ordinary activity. However, people do not ordinarily reach directly behind themselves, palm up, with an extended arm, and attempt to retrieve luggage by carrying it on their palm. Although such an exertion could conceivably occur in day-to-day life, it would not be usual or ordinary.