# CHARLESTON.

HALL *v.* STATE COMPENSATION COMMISSIONER.

(No. 6745)

Submitted May 14, 1930.   Decided May 20, 1930.

*Sherman H. Eary* and *Claude L. Smith,* for appellant.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondent.

LITZ, JUDGE:

The claimant, J. W. Hall, is aggrieved by the action of the compensation commissioner in refusing his application for a

second award under the Workmen's Compensation Law, chapter 15P, Code (as amended by chapter 71, Acts 1929), for disability resulting from an injury sustained by him February 9, 1926, in Raleigh county while employed as a coal loader for the Cranberry Fuel Company, on account of a piece of draw slate falling upon his great right toe. Ceasing work four days later, he was under the care of physicians from that time, almost continuously, for more than two years. Having first been treated by Dr. H. H. Wilson of St. Albans, Kanawha county, he became a patient of Drs. G. W. Fox and L. O. Fox of Ansted, Fayette county. On October 5, 1926, after the amputation of his great right toe, Hall was awarded compensation on the basis of 10 per cent. disability. His application for a second award is predicated on subsequent disability traceable to the original injury. A history of the case, as stated in a joint affidavit of Drs. Fox, secured by an inspector of the compensation department, February 28, 1929, follows:

"J. W. Hall, of Ansted, West Virginia, has been treated by us almost continuously since his injury caused by fall of slate while at work for The Cranberry Fuel Company, of Skelton, West Virginia, which he claims to have received on February 9, 1926.

"When this claimant first come to us, he had an infection of great toe on right foot, stating at that time he had dropped a piece of slate on the toe on or about February 9, 1926. The toe at that time had some discoloration and all the appearance of having had the toe bruised. This infection seemed to get worse all the time, and would not respond to treatment. Then in a few weeks later gangrene set up in the toe, and we sent him to Charleston General Hospital, and they amputated the toe, about the first joint. He came back home and the toe would not heal, and the gangrene was still present. He was sent back to the hospital, and another amputation was made on the toe, about even with the foot. This continued to show signs of infection and gangrene, and finally the Hospital opened the foot on bottom and put in drainage, this continued to give him trouble, by sluffing off.

"Then some time during last year Hall tried to work some for the Gauley Mountain Coal Company, here at Anstead, but

his right foot was not healed up. While working for the Gauley Mountain Coal Company, he claims he bruised the left big toe, this was on the other foot, and came to see us for this trouble. We could find but little at the time to indicate any alarm, and thinking this would not cause him any disability at the time, there was no report made of it. However, this left toe, set up an infection about the same as he had previously had in right toe. This toe got in such a condition that we were uneasy about it, and sent him back to the hospital, and the great toe on the left foot was amputated. And this did not stop the infection, and he was again sent back to the Hospital, and the claimant this time went to the Mountain State Hospital, and they amputated the foot about the middle, and in ten or twelve days after that, it was necessary to amputate the left leg just below the knee, and then the stump healed, and gave him no more trouble on that leg.

"But: Some time after this left leg had completely healed, the right foot flared up again, and he was sent back to Charleston General Hospital, and later sent to Rudolph Matas, of New Orleans, who advised amputation of right leg, Hall then come back home, and went back to Charleston General Hospital where right leg was amputated just below right knee. And the claimant is still in the Hospital at this time.

"Q. Can you give an opinion as to what was causing all this trouble? A. We have known J. W. Hall, all his life, and have no other reason to assign for the trouble except it was a continuation of his original trouble set up from his injury to right big toe on February 9, 1926.

"Q. Have you ever treated J. W. Hall, for venereal trouble? A. No sir.

"Q. Has J. W. Hall had any other diseases which could have contributed to the infection? A. None that we no of. This man has been a very quiet man all his life, and we consider him one of the most honorable and trustworthy men of this section.

"Q. What set up the trouble in his left toe, while working for the Gauley Mountain Coal Company? A. That would be hard to say positively. His blood had become poisoned by the infection in right foot and toe. And if it had not been for the

infection in right toe, I hardly believe he would have had the trouble in left toe.''

Informal application having been made by the claimant, himself, for a supplemental award, he presented through counsel, September 14, 1929, a formal application which was refused in a letter to him by the commissioner, dated October 25, 1929, and stating: ''After consideration of your petition for reconsideration of the award made you on the 5th day of October, 1926, the Commissioner is of opinion to and doth hereby reject said petition, and said cause remains closed.'' Numerous other physicians corroborate Drs. Fox & Fox in their opinion that the amputation of both limbs of claimant was caused by the original injury.

The reason, if any, for rejecting the application is not stated. The Attorney General, in his written argument on behalf of the commissioner, contends that the appeal should be dismissed as improvidently awarded, first, because there was never any hearing on the application, as required by chapter 71, Acts 1929, and, second, for the reason the action of the commissioner complained of does not go to ''the basis of claimant's right to compensation,'' as is also therein required to confer jurisdiction on this court by way of appeal. Section 43 of the amendment provides: ''The commissioner shall have full power and authority to hear and determine all questions within his jurisdiction, and to review the action of any employer taken under section fifty-four hereof, but upon the making of any award going to the basis of claimant's right to compensation, as hereinafter provided from the fund or directly from any employer under section fifty-four, or upon the review of any action of any employer under section fifty-four, the commissioner shall give notice in writing to employer, employee or dependent, as the case may be, of his action, which action shall be final unless the employer, employee or dependent shall, within ten days after receipt of said notice, object to said finding, in which event upon receipt of objection in writing from the employer, employee or dependent relative to the basis of the claim on the ground that the injury was self-inflicted or that it was not received in the course of and resulting from his employment, or upon any other ground going to the

basis of the claimant's or employer's right, the commissioner shall set a time and place for the hearing of evidence, notifying both the employer and claimant at least ten days in advance; and the evidence taken shall be transcribed and become a part of the record in the proceedings, together with other records thereof in the commissioner's office. After said hearing the action of the commissioner affirming, reversing or modifying his former action shall be final; provided, however, that the claimant or the employer may, within ninety days after notice of the final action of the commissioner, apply to the supreme court of appeals for a review of the record and such decisions.''

A hearing having been refused the claimant, this appeal may be treated as a petition for mandamus to compel action by the commissioner on his application. As the evidence, in our opinion, shows that the disability of the claimant, developing subsequently to the award of October 5, 1926, was caused by the original injury and could not then have been reasonably contemplated in fixing the amount of compensation, this application presents a new case, going to the basis of the claimant's right to compensation. ''The power and jurisdiction of the commissioner over each case shall be continuing, and he may from time to time make such modification or change with respect to former findings or orders with respect thereto, as, in his opinion, may be justified.'' Section 40, c. 15P, Code. ''The power and jurisdiction of the commissioner over each case shall be continuing, and he may from time to time, after due notice to the employer, make such modifications or change with respect to former findings or orders with respect thereto as in his opinion may be justified.; provided, no further award may be made except, within one year after death of employee in fatal cases, or, except in case of non-fatal injuries within two years after payments for temporary disability shall have ceased and within one year after the commissioner shall have made the last payment in any permanent disability case.'' Section 40, as amended by chapter 71, Acts 1929. ''The workmen's compensation commissioner has power and jurisdiction to modify or change his former findings with respect to any claim for compensation, and where he has made an award and partial payment, but afterwards upon further investigation finds that

the applicant is not entitled to further compensation, an order refusing compensation, based on substantial and uncontroverted grounds, will not be set aside in a proceeding by mandamus to compel him to pay his former award." *Caldwell* v. *Compensation Commissioner*, 107 W. Va. 272, 148 S. E. 75; *State ex rel. Meeks* v. *Compensation Commissioner*, 108 W. Va. 68, 150 S. E. 230, relied on by the attorney general, and *State ex rel. Murasky* v. *Compensation Commissioner*, 153 S. E. 509, (decided contemporaneously herewith), fall within the class of cases involving the findings of the compensation commissioner, fixing the amount of compensation, which are not reviewable by this court on appeal, nor, ordinarily, by writ of mandamus.

The controlling principles in those cases do not apply to the facts of the present proceeding, which distinguish it as a typical case for the exercise of the continuing jurisdiction of the commissioner on a matter going to the basis of the claimant's right to compensation, subject to review by this court. It is stated in section 552 of Schneider's Workmen's Compensation Law, that "most of the American Compensation Acts (including West Virginia), with the exception of Wyoming and New Hampshire, have provisions permitting the review of an award with a view to increasing, diminishing or terminating compensation on the ground that the disability has changed or upon the ground of mistake." The proceeding is therefore remanded, with direction to the commissioner to grant the claimant a hearing in accordance with the principles herein enunciated. *Remanded.*