J. William Hall *v.* State Compensation Commissioner *et al.*

(No. 6937)

Submitted May 22, 1931.   Decided June 2, 1931.
(Rehearing denied July 24, 1931.)

*Sherman H. Eary* and *Claude L. Smith*, for appellant.
*Howard B. Lee*, Attorney General, *R. Dennis Steed*, Assistant Attorney General, *Hubard & Bacon*, and *Dillon, Mahan & Holt*, for respondents.

Woods, Judge:

Claimant is seeking supplemental compensation for loss of left and right legs, respectively, after a series of amputations, due, as he asserts, to an injury to his right great toe, for the loss of which he received compensation on a ten per cent. partial disability rating.   Upon a refusal of an additional award, this Court, after a consideration of the *ex parte* affidavits, then before the Commissioner, held that claimant's condition could not have been contemplated in the original award, and that the Commissioner's adverse action went to the basis of claimant's right, thereby entitling him to a hearing under chapter 15-P, Code 1923, as amended by chapter

71, Acts 1929. The appeal was treated as a mandamus and the cause remanded for such hearing. *Hall* v. *Commissioner*, 109 W. Va. 230, 153 S. E. 510. After the hearing, an award was denied on the ground that the several amputations were due to Buerger's disease, and not to injury.

The doctors are in agreement that claimant is now suffering from Buerger's disease, or *thrombo-angüitis obliterans*, which is an inflammatory disease of the blood vessels of unknown origin, affecting all the coats of both arteries and veins. It is first noticed in the extremities—severe pains in arches and legs. The blood vessels gradually become blocked, and gangrene follows. The disease is very rare and its cause is mostly theory. While practically all of the doctors expressed the opinion that the disease is not caused by a trauma, they admit that an injury to the toe, as here, might excite the condition, and result in loss of a member of the body several years earlier than would be the case, if no injury had occurred. Dr. Stone, the expert, who admits that he is, and has been for a number of years, suffering from the disease, states that the ravages of the disease may be arrested for a time by a peri-arterial-sympathectomy—a stripping off of the outer coat of the arterial wall—in the arm or leg affected. This operation permits the arteries to dilate and thereby allow the blood to flow more freely into the extremities.

If the loss of claimant's limbs were due to the disease, unaggravated or unaccelerated by any fortuitous event which may be denominated an accident, then in view of the statute, the injury is not compensable. If, however, the injury to the great right toe lighted up such condition, and incapacitated him from performing his duties as an employee, claimant is entitled to compensation. *Warlop* v. *Western Coal & Mining Co.*, 24 Fed. (2nd) 926, and numerous cases therein cited. Many of these cases in principle, at least, very much resemble the case at bar. It is exceedingly difficult to make distinctions without indulging in subtle refinements, which no court charged with the administration of justice is justified in doing under this humane statute which requires a liberal interpretation under our decisions. *Caldwell* v. *Commissioner*, 106 W. Va. 14.

It appears from the evidence that, shortly after the injury to the great toe of the right foot, Hall submitted to two amputations—the second removing the entire toe. Some time thereafter, in an endeavor to make a living, Hall obtained employment with the Gauley Mountain Coal Company, and while favoring his injured foot (admittedly not healed) rubbed the great toe on the left foot, thereby setting up an infection, which resulted in several progressive amputations, the last being made just below the knee. In the meantime the condition in his right foot flared up again, and a series of amputations reached a point below the knee.

The defense advanced by counsel for the employer is based primarily upon the proposition that the claimant never received the alleged injury. The record shows that Hall made complaint shortly after the slate was alleged to have fallen on his toee. The toe bore the evidence of such accident according to the physicians who attended him in the early stages of his trouble. The Commissioner evidently was so impressed with the fact that Hall's condition was the result of an accident that he paid him for the loss of the right great toe. So, accordingly, we must conclude that such accident happened, and, in view of our interpretation of the evidence, that the subsequent amputations were due primarily to such accident.

The case is remanded to the Commissioner with directions to fix the percentage of disability in accordance with the statute, based upon the loss of both legs.

*Remanded with directions.*