IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

**FILED**

**April 28, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0028

JAMES A. MOORE, JR.,
Claimant Below, Petitioner,

v.

ICG TYGART VALLEY, LLC,
Respondent Below, Respondent.

Appeal from the Workers' Compensation Board of Review
Case Nos. 2053723 and 2054350

REVERSED AND REMANDED

Submitted: February 16, 2022
Filed: April 28, 2022

Allan N. Karlin, Esq.
Allan N. Karlin & Associates
Morgantown, West Virginia
Counsel for Petitioner

Jeffrey B. Brannon, Esq.
Jane Ann Pancake, Esq.
T. Jonathan Cook, Esq
Cipriani & Werner, PC
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD dissents and reserves the right to file a dissenting opinion.

JUSTICE BUNN did not participate in the decision of this case.

SYLLABUS BY THE COURT

1.      "In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." Syllabus Point 1, *Barnett v. State Workmen's Comp. Comm'r,* 153 W. Va. 796, 172 S.E.2d 698 (1970).

2.      "A claimant in a workmen's compensation case must bear the burden of proving his claim but in doing so it is not necessary to prove to the exclusion of all else the causal connection between the injury and employment." Syllabus Point 2, *Sowder v. State Workmen's Comp. Comm'r*, 155 W. Va. 889, 189 S.E.2d 674 (1972).

3.      "'The fact that an employee, injured in performing services arising out of and incidental to his employment, was already afflicted with a progressive disease that might some day have produced physical disability, is no reason why the employee should not be allowed compensation, under Workmen's Compensation Act, for the injury, which, added to the disease, superinduced physical disability.' Syllabus, *Hall v. Compensation Commissioner*, 110 W. Va. 551, 159 S.E. 516 (1931)." Syllabus Point 1, *Charlton v. State Workmen's Comp. Comm'r*, 160 W. Va. 664, 236 S.E.2d 241 (1977).

4.      "A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury.  To the extent that the

i

aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable." Syllabus Point 3, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016).

5.     A claimant's disability will be presumed to have resulted from the compensable injury if:  (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards.  There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation.  This presumption is not conclusive; it may be rebutted by the employer.

WALKER, Justice:

In November 2016, Petitioner James A. Moore, Jr., suffered a compensable injury to his right shoulder, back, and neck while driving a shuttle car in a coal mine operated by his employer, Respondent ICG Tygart Valley, LLC. An MRI performed shortly after this injury showed that Mr. Moore had preexisting cervical degenerative disc disease, which had been asymptomatic. After the injury, Mr. Moore developed cervical radiculopathy and underwent an anterior cervical discectomy and fusion at C5-6.

The primary issue on appeal is whether cervical radiculopathy should be added as a compensable condition of Mr. Moore's claim. He argues that the decisions of the Workers' Compensation Board of Review and Office of Judges were legally wrong because his cervical radiculopathy was a discrete new injury under *Gill v. City of Charleston*[1] and his previously asymptomatic degenerative disc disease does not preclude this result under *Charlton v. State Workmen's Compensation Commissioner*.[2] As explained below, Mr. Moore has proven the causal connection between the compensable injury and his cervical radiculopathy. So, we reverse and remand the case to the Board of Review with directions to add that condition as a compensable diagnosis.

---

[1] 236 W. Va. 737, 783 S.E.2d 857 (2016).

[2] 160 W. Va. 664, 236 S.E.2d 241 (1977).

1

## I. FACTS AND PROCEDURAL HISTORY

Mr. Moore was 48 years old when he suffered a career-ending injury while working at the Leer Mining Complex in Taylor County, West Virginia. On November 14, 2016, Mr. Moore was driving a shuttle car in the coal mine; when its brakes locked up, he was thrown upward, and his head hit the car's canopy. Mr. Moore was holding the car's grab rail with his right arm and the impact injured his right shoulder. Mr. Moore described the incident "like being in a crash or hitting a brick wall." He reported the injury to his section foreman shortly after the accident.[3]

Mr. Moore's application for workers' compensation benefits was approved, and the claim was held compensable for right shoulder sprain, upper back strain, and neck pain. Mr. Moore underwent arthroscopic surgery on his right shoulder in May 2017. Initially, Mr. Moore was treated conservatively for his neck pain; he started physical therapy in December 2016. MRI studies performed shortly after the accident showed

---

[3] The Office of Judges made fifty-one findings of fact in its June 3, 2019, decision. We summarize the facts relevant to this appeal.

degenerative disc disease (spondylosis) and disc abnormalities in Mr. Moore's cervical spine,[4] but he had no history of neck injuries or cervical radiculopathy.

Mr. Moore's initial treating physician, Chuanfang Jin, M.D., examined him in January 2017 and diagnosed cervical sprain and cervical radicular pain (diagnosis code M54.12). Dr. Jin stated that Mr. Moore's injury exacerbated the preexisting cervical degenerative disc disease, causing new symptoms, but she believed that condition was not compensable because there was no change in pathology.

Mr. Moore returned to Dr. Jin in February and March of 2017; she noted that he continued to complain of constant neck pain with radiation to the right arm and right arm numbness. Dr. Jin stated that Mr. Moore was unable to work as a coal miner. Considering his age and occupation, Dr. Jin stated that it was not unusual for Mr. Moore to have degenerative disc disease.[5] She referred Mr. Moore to a pain specialist to address his significant cervical radicular complaints in March 2017.

---

[4] In April 2018, Dr. Jonathan Luchs performed an "Age of Injury Analysis" based on the December 2016 MRI of Mr. Moore's cervical spine. He concluded that this MRI demonstrated degenerative disc disease and degenerative arthropathy. He concurred with the primary reader's findings of disc abnormalities at C4-5 and C5-6.

[5] *See* Elan D. Louis, M.D., M.S., Stephan A. Mayer, M.D., F.C.C.M., Lewis P. Rowland, M.D., *Merritt's Neurology*, Chap. 109, Intervertebral Disk Disease and Radiculopathy 946 (13th ed. 2015) ("Pathologic studies have demonstrated that almost all individuals older than the age of 30 years have some evidence of disk degeneration. As (continued . . .)

Richard M. Vaglienti, M.D., Associate Professor of Anesthesiology and Psychiatry and Director of WVU Medicine's Center for Integrative Pain Management, evaluated Mr. Moore in April 2017. He diagnosed Mr. Moore with C6 cervical radiculopathy (diagnosis code M54.12). Dr. Vaglienti started treating Mr. Moore in 2017 and continued to do so into 2018.[6]

In October 2017, Dr. Jin reported that Mr. Moore had reached his maximum degree of medical improvement for his neck pain. After receiving this report, the claim administrator entered an order on October 19, 2017, closing the claim for temporary total disability (TTD) benefits. It had previously granted a 0% permanent partial disability (PPD) award on September 26, 2017. Mr. Moore protested these orders.

In a letter dated March 16, 2018, Dr. Vaglienti stated that Mr. Moore's cervical radiculopathy was directly related to the compensable injury. He stated that considering the force of the injury, and the "minimal findings of the MRI," it was probable that the cervical radiculopathy would have occurred even in the absence of degenerative

---

individuals age, spondylosis and osteochondrosis, the long-term sequelae of degenerative disk disease, become more and more prominent.").

[6] Mr. Moore's treatment included cervical epidural steroid injections, medial branch block injections, trigger point injections, and nerve root injections.

An MRI study taken in February 2018 showed: (1) reversal of expected lordotic curvature; (2) advanced uncovertebral osteoarthritis at C5-6 with spinal canal and foraminal narrowing, and (3) C4-5 disc herniation on the left.

disc disease. Dr. Vaglienti did not believe that Mr. Moore had reached his maximum degree of medical improvement. He referred Mr. Moore to a spine surgeon.

In May 2018, Mr. Moore was evaluated by Dr. John France, Chief of Spinal Surgery at WVU's Department of Orthopedics. Dr. France's assessment was C6 cervical radiculopathy (diagnosis code M54.12). On June 29, 2018, Mr. Moore underwent an anterior cervical discectomy and fusion at C5-6, without complication. In his post-surgical follow up appointment two weeks later, Mr. Moore reported significant improvement.

Dr. France completed a diagnosis update form on August 21, 2018, requesting that C5-6 spondylosis with C6 radiculopathy (diagnosis code M47.22) be added as a compensable condition of the claim. On this form, Dr. France referred to his office notes of May 8, 2018, and August 9, 2018, where he also listed the diagnosis of C6 cervical radiculopathy (diagnosis code M54.12). Dr. France completed a claim reopening application on August 21, 2018, certifying that Mr. Moore was TTD from June 29, 2018, through September 30, 2018.

On September 17, 2018, the claims administrator denied Mr. Moore's request to add C5-6 spondylosis with C6 radiculopathy as a compensable condition. It issued another order on September 17, 2018, and denied Mr. Moore's request to reopen the claim for TTD benefits, finding that his disability was unrelated to the approved diagnoses. Mr. Moore protested these orders.

5

In November 2018, Bruce Guberman, M.D., performed a medical evaluation of Mr. Moore. Dr. Guberman diagnosed chronic post-traumatic strain of the cervical spine with C6 cervical radiculopathy (diagnosis code M54.12). He stated that Mr. Moore's cervical radicular symptoms and surgery were directly related to the compensable injury. Dr. Guberman stated that Mr. Moore had an impairment rating of 25% PPD for his cervical spine and 4% PPD for his right shoulder.

When Mr. Moore's protests to the four claim administrator's orders proceeded to the Office of Judges, his counsel submitted closing arguments requesting that cervical radiculopathy be added as a compensable condition of the claim based on the opinions of Drs. France, Vaglienti, and Guberman. He argued that the compensable injury aggravated the preexisting degenerative disc disease and produced a discrete new injury, cervical radiculopathy. Relying on *Gill* and *Charlton*, Mr. Moore's counsel noted that Mr. Moore had no symptoms of cervical radiculopathy prior to the compensable injury. In closing arguments, ICG's counsel stated that Dr. France's diagnosis update form listed the preexisting condition of spondylosis, when the medical evidence was clear that spondylosis was a noncompensable, degenerative condition.

In its June 13, 2019, decision, the Office of Judges affirmed the claim administrator's order denying the request to add C5-6 spondylosis with C6 radiculopathy as a compensable condition. When addressing Mr. Moore's request to add cervical radiculopathy, the Office of Judges focused solely on the diagnosis update form, not Dr.

6

France's office notes, and stated that "Dr. France did not request a stand-alone diagnosis of cervical radiculopathy; rather, he requested a diagnosis of spondylosis with associated radiculopathy." It also commented that "the objective clinical findings of the various evaluators and medical providers of record do not support a diagnosis of radiculopathy." The Office of Judges ultimately concluded that Mr. Moore "has failed to prove by a preponderance of evidence that C5-6 spondylosis with C6 radiculopathy should be added as a compensable diagnosis in the claim[,]" but it did not rule on his request to add cervical radiculopathy.

The Board of Review affirmed the decision of the Office of Judges, stating that

> John France, MD, requested that [C5-6] spondylosis with C6 radiculopathy . . . be added as [a] compensable [diagnosis] in the claim. . . . On appeal, the claimant argues that radiculopathy or radicular pain should be added as a compensable component of the claim, citing Gill v. City of Charleston, 236 W.Va. 737, 783 S.E.2d 857 (2016). The Board finds that Gill and the subsequent case law do not support the claimant's position. Therefore, in the absence of further clarification regarding the Gill case, the Board finds the Administrative Law Judge's Decision is not clearly wrong.

7

Mr. Moore appeals two orders of the Board of Review dated December 13, 2019, which affirmed two decisions of the Office of Judges.[7]

## II. STANDARD OF REVIEW

Mr. Moore contends that the Board of Review's orders affirming the decisions of the Office of Judges are based on erroneous conclusions of law. On appeal, we give deference to the Board of Review's "findings, reasoning, and conclusions[,]"[8] and apply the criteria set forth in West Virginia Code § 23-5-15 (2005):

> (c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of

---

[7] In its June 3, 2019, decision, the Office of Judges affirmed the following orders of the claims administrator: (1) the October 19, 2017, order closing the claim for TTD benefits; (2) the September 17, 2018, order denying Mr. Moore's request to reopen the claim for TTD benefits; and (3) the September 17, 2018, order denying the request to add C5-6 spondylosis with C6 radiculopathy as a compensable diagnosis in the claim. In its November 26, 2018, decision, the Office of Judges affirmed the claims administrator's September 26, 2017, order granting a 0% PPD award.

[8] W. Va. Code § 23-5-15(b) (2005).

8

law, or was based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record.

As we recognized in *Justice v. West Virginia Office Insurance Commission*,[9] this Court applies a de novo standard of review to questions of law arising in the context of decisions issued by the Board of Review.

## III. ANALYSIS

"In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment."[10] "A claimant in a workmen's compensation case must bear the burden of proving his claim but in doing so it is not necessary to prove to the exclusion of all else the causal connection between the injury and employment."[11]

The presence of a preexisting disease or condition does not enhance the degree of proof required to establish a causal connection between the employment and the

---

[9] 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

[10] Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *see also* W. Va. Code § 23-4-1(a) (2008).

[11] Syl. Pt. 2, *Sowder v. State Workmen's Comp. Comm'r*, 155 W. Va. 889, 189 S.E.2d 674 (1972).

compensable injury.[12]  So, when Mr. Moore requested an additional diagnosis to the claim, he had the burden of proving that it was the result of a personal injury that was received in the course of employment, and it resulted from that employment.

On appeal, Mr. Moore argues that cervical radiculopathy should be added as a compensable condition under (1) *Gill* because it is a discrete new injury arising from the workplace injury; and (2) *Charlton* because the workplace injury aggravated or accelerated his preexisting, but asymptomatic, cervical degenerative disc disease causing this new diagnosis.[13]  ICG counters that the issue here is whether the claims administrator was correct in denying the request to add C5-6 spondylosis with C6 radiculopathy as a compensable condition, not cervical radiculopathy.  Because the requested diagnosis included the degenerative disc disease (spondylosis), ICG maintains that the Board of Review's decision is a proper application of *Gill*.[14]  In his reply, Mr. Moore states that the Office of Judges, the Board of Review, and this Court can consider alternatives to Dr.

---

[12] *Modern Workers Compensation*, Chapter 307 Weight & Sufficiency of Evidence § 307:7. Causation—Pre-existing Conditions (March 2022 Update); *see also Horne v. McDowell Cty. Comm'n*, No. 18-0678, 2019 WL 6701794, at *5 (W. Va. Dec. 6, 2019) (memorandum decision) (stating compensability of additional conditions is decided under same standard as compensability of injury).

[13] Mr. Moore states that the related issues should also be reversed, and the claim remanded with instructions to reopen it for additional TTD benefits for the time he was recovering from surgery, and to determine whether he is entitled to a PPD award.

[14] ICG contends that the remaining issues regarding TTD and PPD benefits were properly decided because spondylosis is a preexisting degenerative condition.

France's diagnosis update based on the record. We quickly dispose of ICG's procedural point before addressing Mr. Moore's substantive arguments.

## A.    *The Request to Add Cervical Radiculopathy*

ICG contends that Mr. Moore is not focusing on the proper issue on appeal. While it argues that "there has not been a request to add cervical radicular pain or radiculopathy as compensable conditions[,]" to the claims administrator, the record reveals that this request was before the Office of Judges.

When Mr. Moore's protests to the four claim administrator's orders proceeded to the Office of Judges, his counsel requested that cervical radiculopathy be added as a compensable diagnosis, and ICG responded to the issue. At this point, the Office of Judges had the statutory authority to rule on the request and modify the order of the claims administrator.[15] West Virginia Code § 23-5-9(d) (2007) provides that when a party appeals an order of a claims administrator, the Office of Judges "shall, based on the determination of the facts of the case and applicable law, render a decision affirming,

---

[15] For instance, in *Best Buy v. Parrish*, No. 15-1153, 2016 WL 7105264 (W. Va. Dec. 6, 2016) (memorandum decision), the claims administrator approved the claim for the diagnosis of a right foot crush injury. On appeal, the Office of Judges determined that the diagnosis of complex regional pain syndrome should also be compensable when six treating physicians opined that the claimant suffered from this condition. *Id*. at *2. So, the Office of Judges added this additional diagnosis even when the claimant had not formally requested it on a diagnosis update form. This decision was affirmed by the Board of Review and this Court.

reversing or modifying the action protested."[16]  Instead of applying its findings of fact to the issue, the Office of Judges abdicated its responsibility and defaulted to the diagnosis code listed on the form—ignoring the reference to Dr. France's office notes that supported Mr. Moore's request.[17]  This ruling elevated form over substance in violation of West Virginia Code § 23-1-1(b) (2007), which provides that it is the "intent of the Legislature that this chapter be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers[,] . . . and workers' compensation cases shall be decided on their merits[.]"

The dissent claims that the Office of Judges actually considered Mr. Moore's request to add cervical radiculopathy as a compensable condition but found that the weight of the objective evidence did not support this diagnosis.  So, it faults us for not giving deference to the Office of Judges' remark that "the record raises significant questions regarding the very diagnosis of radiculopathy in this case[,]" as well as its comment that "the objective medical evidence of record does not support a diagnosis of true

---

[16] W. Va. Code § 23-5-9(d).  West Virginia Code § 23-5-9(e) provides that the Office of Judges may also remand a claim to the claims administrator "for further development of the facts or administrative matters as, in the opinion of the administrative law judge, may be necessary for a full and complete disposition of the case."

[17] The Office of Judges stated that Mr. Moore's counsel argued "that the opinions of Drs. France, Vaglienti, and Guberman support[ed] the conclusion that the claimant's cervical pain with radiculopathy is a compensable condition in the claim."  The Office of Judges stated that in Dr. France's diagnosis update request, he "referred to his office notes of May 8, 2018, and August 9, 2018."  And it discussed Dr. France's May 8, 2018, office notes and stated that his "assessment was right C6 radiculopathy[.]"

12

radiculopathy." This was, of course, pure dictum and not fact finding because it never ruled on Mr. Moore's request. And while an administrative law judge is tasked with weighing the evidence and resolving contradictory medical opinions, he is not free to set his own expertise against that of all physicians who have personally examined Mr. Moore.[18]

The dissent also invokes West Virginia Code § 23-5-15(d), which says this Court may reverse a finding of the Office of Judges or the Board of Review only when there is a "material misstatement or mischaracterization of particular components of the evidentiary record." But even if we assume that the Office of Judges addressed Mr. Moore's request to add cervical radiculopathy and rejected it—an argument even ICG does not advance—we are not swayed by the dissent's appeal to give deference to an opinion that is contrary to every examining physician of record.

---

[18] *See e.g., Burns v. Colvin*, 156 F. Supp. 3d 579, 583 (M.D. Pa. 2016) ("[N]o reasonable mind would find the ALJ's evidence to be adequate when the ALJ reject[ed] every medical opinion in the record with only lay reinterpretation of medical evidence."); *see also Todd v. Heckler*, 587 F. Supp. 1129, 1133 (W.D. Ky. 1984) (quoting *Ragan v. Finch*, 435 F.2d 239, 241 (6th Cir.1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971)) ("While the ALJ may choose between contradictory medical opinions or reject a medical opinion that is contradicted by other evidence of record, he is not free to set his own expertise against that of a physician who has personally examined the claimant.").

The record is clear that Mr. Moore's request to add cervical radiculopathy as a compensable condition was squarely before the Office of Judges and the Board of Review. So, it is properly before this Court on appeal.

**B.      *Cervical Radiculopathy is Causally Connected to the Injury***

As noted above, Mr. Moore argues that the decisions of the Office of Judges and Board of Review are legally wrong. He contends that cervical radiculopathy should be added as a compensable condition under (1) *Gill* because it is a discrete new injury arising from the workplace injury; and (2) *Charlton* because the workplace injury aggravated or accelerated his preexisting, but asymptomatic, cervical degenerative disc disease causing this new diagnosis. Mr. Moore states Drs. Vaglienti, France, and Guberman agree that cervical radiculopathy is causally connected to the compensable injury. Because these assignments of error are closely related, we consider them together.[19]

This Court has addressed issues of compensability when claimants had preexisting noncompensable injuries or diseases—both symptomatic and asymptomatic. These highly fact-specific issues are ultimately causal connection determinations based on the medical evidence coupled with the nature and severity of the compensable injury. We

---

[19] ICG does not directly respond to these arguments, nor does it cite *Charlton*. As previously noted, ICG argues that the request to add C5-6 spondylosis with C6 radiculopathy as a compensable condition was properly rejected under *Gill*.

14

begin with *Charlton*, where the claimant developed debilitating ulcerated feet as a result of working in coal mine water containing magnetite, sulphuric acid, grease, oil, and kerosene.[20] Mr. Charlton's claim was originally denied because he had a preexisting, noncompensable blood vessel disease known as Buerger's Disease that may have made him prone to developing skin problems.[21] But this Court reversed the ruling on appeal because the evidence showed that Mr. Charlton's ulcerated feet were causally related to his work, which required him to stand in mine water.[22] We held that:

> The fact that an employee, injured in performing services arising out of and incidental to his employment, was already afflicted with a progressive disease that might some day have produced physical disability, is no reason why the employee should not be allowed compensation, under Workmen's Compensation Act, for the injury, which, added to the disease, superinduced physical disability.[23]

*Charlton* is similar to the case before us because Mr. Moore's work injury aggravated his degenerative disc disease, which was previously asymptomatic, causing cervical radiculopathy.

---

[20] 160 W. Va. at 665, 236 S.E.2d at 242.

[21] *Id*. at 667, 236 S.E.2d at 243.

[22] *Id*.

[23] *Id*. at 665, 236 S.E.2d at 242, Syl. Pt. 1 (quoting Syl., *Hall v. Comp. Comm'r*, 110 W. Va. 551, 159 S.E. 516 (1931)).

Even though Mr. Moore had no prior back injuries or symptoms related to his degenerative disc disease, our holding in *Gill* is still applicable because the principle is the same. Mr. Gill had significant prior back injuries along with an extensive history of treatment for lumbar radiculopathy and degenerative disc disease; he was symptomatic for years before his compensable back injury.[24] Mr. Gill's claim was approved for lumbar and thoracic sprain, but when his treatment provider requested authorization for certain procedures, he listed four diagnostic codes that were not compensable diagnoses.[25] After the request for treatment was denied by the claims administrator, Mr. Gill protested and the Office of Judges added those four diagnostic codes to the claim even though no formal request was made, and the evidence showed no causal connection between those diagnoses and the compensable injury.[26] The Board of Review reversed the decision and concluded that the diagnoses were not compensable.[27] On appeal, this Court affirmed, but we

---

[24] 236 W. Va. at 739, 783 S.E.2d at 859.

[25] This Court noted "that no physician requested the diagnostic codes 724.4 (neuritis/radiculitis), 724.3 (sciatica), 722.52 (degeneration of lumbosacral IVD), and 724.8 (facet syndrome) be added as compensable" diagnoses in the claim. *Id*. at 742, 783 S.E.2d at 861.

[26] *Id*.

[27] *Id*. at 740, 783 S.E.2d at 860.

16

addressed the question of when the aggravation of a preexisting condition could be held compensable.[28]

In *Gill*, we discussed a line of cases where we applied *Charlton* "for the proposition that a preexisting injury does not preclude a new compensable injury from arising."[29] And in syllabus point 3 of *Gill*, this Court crafted a general rule that:

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.[30]

So, a claimant has the burden of proving that the compensable injury exacerbated, accelerated, or worsened the preexisting condition or disease causing a new distinct injury.[31] The Supreme Court of Louisiana has created the following rebuttable presumption in cases like these to help facilitate compensability rulings:

> A plaintiff-employee's disability will be presumed to have resulted from an employment accident if before the accident the plaintiff-employee was in good health, but

---

[28] *Id*. at 744, 783 S.E.2d at 864.

[29] 236 W. Va. at 745, 783 S.E.2d at 865.

[30] *Id*. at 738, 783 S.E.2d at 858.

[31] *Id*.

17

commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, provided that the evidence shows that there is a reasonable possibility of causal connection between the accident and the disabling condition. This presumption is not a conclusive one; rather, it compels the defendant to come forward with sufficient contrary evidence to rebut it.[32]

We also find this to be a helpful tool considering the prevalence of degenerative disc disease.[33] We now hold that a claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

A simple recurrence of the same symptoms inherent in the etiology of the preexisting condition or disease is not sufficient to meet this burden of showing a causal

---

[32] *Hammond v. Fid. & Cas. Co. of New York*, 419 So. 2d 829, 831 (La. 1982) (citations omitted); *see also Whitten v. Patterson UTI Drilling Co., LLC*, 294 So. 3d 590, 598 (La. App. 2 Cir. 2020) ("The presumption of causation hinges on a finding of sufficient medical evidence to show a reasonable possibility of a causal relation between the accident and disability.").

[33] *See* note 5, above.

connection.[34] For instance, in *Moss v. Blackhawk Mining, LLC*,[35] the claimant injured his head, neck, and shoulders, when he was struck by a rock in February 2017 while working in the coal mines. The claim was held compensable for concussion and right shoulder contusion.[36] The claims administrator denied Mr. Moss's request to add cervical sprain and C7 radiculopathy to the claim. That decision was affirmed by the Office of Judges and Board of Review because Mr. Moss had a history of cervical spine issues dating back to 2009; he was diagnosed with cervical radiculopathy, which was symptomatic and required treatment, years before the compensable injury.[37] On appeal, this Court agreed with the conclusion of the Board of Review because "[m]edical records prior to the compensable injury indicate that Mr. Moss suffered from essentially the same cervical symptoms and conditions that he reported post-injury."[38] So, no causal connection was demonstrated.

---

[34] *See e.g.*, *Trosper v. Armstrong Wood Prod., Inc.*, 273 S.W.3d 598, 607 (Tenn. 2008) ("We reiterate that the employee does not suffer a compensable injury where the work activity aggravates the pre-existing condition merely by increasing the pain. However, if the work injury advances the severity of the pre-existing condition, or if, as a result of the pre-existing condition, the employee suffers a new, distinct injury other than increased pain, then the work injury is compensable.").

[35] No. 19-0721, 2020 WL 6559077 (W. Va. Nov. 6, 2020) (memorandum decision).

[36] *Id*. at *1.

[37] *Id*.

[38] *Id*. at *5.

In this case, we agree with Mr. Moore that had the Office of Judges properly applied *Gill* and *Charlton* to its findings of facts it would have granted his request to add cervical radiculopathy as a compensable condition.[39]  The evidence showed that Mr. Moore's degenerative disc disease was asymptomatic, and that the compensable injury caused him to develop cervical radiculopathy, a new distinct injury.  In his February 14, 2019, letter, Dr. Vaglienti explained that

> Mr. Moore had Degenerative Disease of his neck, which was asymptomatic until the new injury occurred on November 14th, 2016.  Had this injury never occurred it is possible that the Radiculopathy would never have occurred.
>
> . . . Given the force of the injury and the reported minimal findings of the MRI, it is probable that this Radiculopathy would have occurred even in the absence of Cervical Degenerative Disease.

Drs. France and Guberman also opined that Mr. Moore's cervical radiculopathy was causally connected to the compensable injury.  And while Dr. Jin stated that degenerative disc changes are the most common cause of radiculopathy in the general population, she also believed that Mr. Moore's compensable injury triggered that condition leading to cervical radicular pain.[40]

---

[39] We note that the Office of Judges did not discount any physician's opinion for being not credible.

[40] *See Narum v. Liberty Nw. Ins. Corp.*, 206 P.3d 964, 970 (Mont. 2009) (upholding compensability ruling when medical professionals agreed that claimant "was (continued . . .)

For these reasons, we find that the Office of Judges and Board of Review committed clear legal error by not modifying the claims administrator's September 17, 2018, order and granting Mr. Moore's request to add cervical radiculopathy as a compensable condition of the claim.

## IV. CONCLUSION

For the reasons set out above, we reverse the December 13, 2019, orders of the Board of Review and remand this case with directions to (1) add C6 cervical radiculopathy (diagnosis code M54.12) as a compensable condition in this claim; (2) reopen the claim for additional temporary total disability benefits as substantiated by medical evidence; and (3) determine whether Mr. Moore is entitled to a permanent partial disability award.

Reversed and<br>remanded.

---

asymptomatic before the industrial accident, and that, since the accident, he has seen a steady degeneration of his condition and increasing pain. This provided substantial evidence for the WCC to conclude that the industrial accident exacerbated his degenerative condition leading to ongoing pain, thus requiring surgery and other treatment.").

21