# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FRANK MAYER,**
**Claimant Below, Petitioner**

**FILED**
**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-28**          (JCN: 2023021874)

**CITY OF CLARKSBURG,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Frank Mayer appeals the December 17, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent City of Clarksburg ("Clarksburg") filed a response.[1] Mr. Mayer did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied authorization for a left total knee replacement.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's order but no substantial question of law. For the reasons set forth below, a memorandum decision vacating and remanding for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 24, 2023, while employed by Clarksburg, Mr. Mayer was mowing when he slipped and fell, landing with his leg bent underneath him. Mr. Mayer was seen at the United Hospital Center Emergency Room on the date of the injury, with a chief complaint of left knee pain and right shoulder pain. The assessment was a patella fracture and right shoulder strain. Mr. Mayer filed an Employees' and Physicians' Report of Occupational Injury dated May 24, 2023, indicating that he suffered an injury to his right shoulder and left leg when he was cutting grass on a hillside, and he fell when the bank gave way. The physician's portion was signed at United Hospital Center and notes an occupational injury to the right shoulder and left knee.

Mr. Mayer was seen by William Dahl, M.D., on May 26, 2023, and the assessment was a rupture of the left quadriceps, a closed fracture of the left patella, and an injury of the right shoulder. Dr. Dahl opined that Mr. Mayer would benefit from surgical fixation of

---

[1] Mr. Mayer is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq. Clarksburg is represented by James W. Heslep, Esq.

1

the left quadriceps rupture. The claim administrator issued an order dated May 31, 2023, holding the claim compensable for a strain of muscle, fascia, and tendon involving the right shoulder and upper arm; a strain of the left quadriceps; and a closed fracture of the left patella.

On June 1, 2023, Mr. Mayer underwent a left quadriceps repair performed by Joshua Sykes, M.D. It was noted that a couple of loose bone fragments were removed. A post-operative office note dated June 19, 2023, was signed by Miranda McCroskey, NPC. Mr. Mayer reported that he had a constant sharp pain in his left leg that worsened with ambulation. Mr. Mayer was instructed to remain in his knee immobilizer with his knee straight for four weeks. On August 1, 2023, Dr. Sykes directed Mr. Mayer to remain in the knee immobilizer for ambulation. Mr. Mayer was to remain off work until his follow-up appointment.

Mr. Mayer was seen by Dr. Sykes on October 10, 2023. Dr. Sykes assessed status-post tendon repair, effusion of the left knee, and rupture of the left quadriceps tendon. Dr. Sykes ordered an MRI of the left knee and stated that Mr. Mayer was to stay off work until he is reevaluated. On October 16, 2023, Mr. Mayer underwent an MRI of the left knee, revealing a prominent buckle-handle tear of the medial meniscus, bone marrow edema/bone bruise of the medial tibial plateau, and moderate knee joint effusion. edema/bone bruise of the medial tibial plateau, and moderate knee joint effusion. Mr. Mayer saw Dr. Sykes on November 27, 2023.  Dr. Sykes wrote that Mr. Mayer had continued left knee pain.  He wrote that the October 16, 2023, MRI showed:

> a diminutive medial meniscus and has a history of meniscectomy with Dr. Sickles without any buckethandle tear…I discussed with [Mr. Mayer] that he has some early/moderate arthritic changes and I don't think knee arthroscopy would provide him with significant relief as he doesn't have any meniscal pathology that can be improved with knee arthroscopy.  I have placed him to be evaluated by a total joint specialist.

Mr. Mayer was seen by Nick Zervos, M.D., on February 6, 2024, for status post left knee injury with fall and quadriceps tear with posttraumatic arthritis. Dr. Zervos requested authorization for a total left knee replacement.

On February 7, 2024, Mr. Mayer was evaluated by Kelly Agnew, M.D., who stated that Mr. Mayer had severe preexisting osteoarthritis involving his left knee and that he had a left knee arthroscopy about twenty years prior. Dr. Agnew opined that this prior surgery, the passage of time, and Mr. Mayer's body habitus have contributed to the osteoarthritic changes. Dr. Agnew noted that a left patella fracture was part of the compensable injury, but he opined that the fracture was actually an avulsion of bony fragments at the site of a quadriceps tendon avulsion and that the avulsion was appropriately repaired. He further

2

opined that the postoperative MRI did not suggest persistent or recurrent tearing or persistent or recurrent patella fracture fragments at the site of the prior avulsion. Dr. Agnew noted that, at the time of the evaluation, Mr. Mayer had no visible, palpable, or measurable effusion and no atrophy above or below the knee. He further noted that Mr. Mayer had completed physical therapy. Mr. Mayer was found to be at maximum medical improvement for the compensable knee injury.

Dr. Zervos authored correspondence dated March 6, 2024, opining that Mr. Mayer sustained a work-related rupture of his left quadriceps. Dr. Zervos wrote the following:

> We discussed that since his knee had no prior symptoms of his arthritis prior to this fall and that the fall aggravated his knee to the point where his arthritis became evident. He now has continued pain due to the arthritis which was not present prior to injury. We believe at this point that the injury causing acceleration of his arthritic symptoms and complaints. I believe this is all related to his previous injury. He will need at this point total knee replacement to resolve this issue.

On March 6, 2024, James Dauphin, M.D, reviewed Mr. Mayer's medical records and made the same observation as Dr. Sykes, Dr. Zervos, and Dr. Agnew: that Mr. Mayer had preexisting arthritis in his left knee. Dr. Dauphin did not provide a history of Mr. Mayer's knee complaints after the 1990s ACL repair, but he agreed with Dr. Agnew's opinion that a left knee replacement should not be covered in this claim.

By order dated April 9, 2024, the claim administrator denied authorization for a left total knee replacement. Mr. Meyer protested this order.

Mr. Mayer was deposed on August 5, 2024. According to Mr. Mayer's testimony, he tore the anterior cruciate ligament ("ACL") of his left knee in the 1990s. He stated that he underwent surgical repair of his ACL and was able to return to work without difficulties. Mr. Mayer testified that he had no left knee symptoms prior to the compensable injury, and the appendix record contains no evidence of left knee treatment after the ACL surgery. Mr. Mayer testified that on May 24, 2023, he was cutting grass with a weed eater when the embankment on which he was standing collapsed and threw him into a creek. Mr. Mayer hit his right shoulder while falling and landed upside-down in a creek with his left leg bent underneath him. The compensable injury fractured Mr. Mayer's patella and ruptured his left quadriceps.

On December 17, 2024, the Board affirmed the claim administrator's order, finding that the requested surgery was not medically related and reasonably required medical treatment for the compensable injury. Mr. Mayer now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Mr. Mayer argues that his treating surgeon, Dr. Zervos, opined that he remained temporarily and totally disabled until at least October 1, 2024. Mr. Mayer further argues that Dr. Zervos has treated his left knee and is, therefore, in a better position to determine the timeline of recovery. Finally, Mr. Mayer argues that Dr. Agnew's report conflicts with the opinion of Dr. Zervos, who believes his need for a left knee replacement was caused by the compensable injury.

In *Workman v. ACNR Resources, Inc.*, No. 23-638, 2025 WL 1603935 (June 6, 2025), the Supreme Court of Appeals of West Virginia ("SCAWV") found that the Board did not do adequate analysis and simply took the word of one physician over another with no explanation and despite the claimant's introduction of evidence of that she remained temporarily and totally disabled due to the compensable injury. The SCAWV cited its holding in *Dunlap v. State Workmen's Comp. Comm'r*, 160 W. Va. 58, 232 S.E.2d 343 (1977), "[i]f an injured employee provides some evidence to demonstrate that a particular injury did arise from the subject industrial accident, absent evidence which to some degree of certainty attributes the injury to a cause other than the subject accident, it will be presumed to have resulted from such accident." *Id.* at Syl. Pt. 2.

Here, the Board determined that Mr. Mayer failed to establish that the proposed left knee replacement is medically related and reasonably required treatment for the compensable knee injury.

4

Upon review, we conclude that the Board should have applied the principles set forth in *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022). Pursuant to *Moore*, "[a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer." *Id.* at Syl. Pt. 5.

When affirming the denial of a left knee replacement, the Board failed to address Syllabus Point 5 of *Moore* and long-standing SCAWV precedent that

> [t]he fact that an employee, injured in performing services arising out of and incidental to his employment, was already afflicted with a progressive disease that might some day have produced physical disability is no reason why the employee should not be allowed compensation, under Workmen's Compensation Act, for the injury, which, added to the disease, superinduced physical disability.

Syllabus, *Hall v. State Comp. Comm'r*, 110 W. Va. 551, 159 S.E. 516 (1931).

The holdings in *Hall* were cited in *Charlton v. State Workmen's Comp. Comm'r*, 160 W. Va. 664, 236 S.E.2d 241 (1977). In *Charlton*, the claimant had a medical condition called Buerger's Disease. While working in contaminated, high water as a coal miner, the claimant developed ulcers on his toes. Under normal circumstances, individuals with similar ulcers would have healed without difficulty. However, because the claimant in *Charlton* had Buerger's Disease, his foot ulcers developed chronic infections, which prevented him from returning to work. The SCAWV determined that the claimant's chronic infections were entitled to workers' compensation coverage. *Charlton* was discussed and reaffirmed in *Moore*, and even though the claimant in *Moore* had preexisting cervical degenerative disc disease, the SCAWV ordered that cervical radiculopathy be held compensable.

Mr. Mayer had left knee surgery approximately twenty-five years before the compensable injury. The Board's order does not address Syllabus Point 5 of *Moore*, or Mr. Mayer's argument that his left knee was asymptomatic prior to the compensable injury.

5

The BOR order also does not discuss whether Mr. Mayer's arthritic symptoms appeared and continuously manifested after the injury.[2]

We do not believe that Mr. Mayer's preexisting arthritis is a compensable condition in this claim.[3] However, the BOR should adequately address *Hall*, *Charlton*, and *Moore* and then determine whether the treatment Mr. Mayer seeks, namely a left knee replacement, should be authorized.

Accordingly, we vacate the Board's December 17, 2024, order, and remand to the Board for further proceedings consistent with this decision.

Vacated and Remanded.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[2] We also note that there is conflicting evidence regarding the extent of Mr. Mayer's pre-existing arthritis. Dr. Agnew characterized the arthritis as "severe preexisting osteoarthritis," while Dr. Sykes described it as "some early/moderate arthritic changes." Nevertheless, we emphasize that no evidence in the record indicates that Mr. Mayer's left knee was symptomatic prior to the compensable injury.

[3] Our holding in *Blackhawk Mining v. Argabright*, ___ W. Va. ___, 915 S.E.2d 7 (2023), reaffirms the holding in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016) that preexisting noncompensable conditions may not be held compensable. "A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable." *Id*. at 738, 783 S.E.2d at 858, syl. pt. 3.